281 So.2d 1 (1973)
Clara H. KLUGER, Appellant,
v.
Bernadette WHITE and Manchester Insurance and Indemnity Company, Appellees.
No. 42799.
Supreme Court of Florida.
July 11, 1973.
Michael E. Cox, Marathon, and Jeffrey M. Fenster, Miami, for appellant.
*2 Richard J. Thornton and John H. Wahl, Jr. of Walton, Lantaff, Schroeder, Carson & Wahl, Miami, for appellee White.
R. Fred Lewis of Kuvin, Klingensmith & Coon, Coconut Grove, for appellee Manchester Ins. and Indem. Co.
Frederick B. Karl of Raymond, Wilson, Karl, Conway & Barr, Daytona Beach, for amicus curiae, American Ins. Assn.
Robert L. Shevin, Atty. Gen., and Barry Scott Richard, Asst. Atty. Gen., for amicus curiae, State of Florida.
ADKINS, Justice.
This is an appeal from an order of dismissal entered for defendants and against plaintiff in this property damage action by the Dade County Circuit Court, specifically passing upon the constitutionality of Fla. Stat. § 627.738, F.S.A. We have jurisdiction pursuant to Fla. Const., art. V, § 3(b)(1), F.S.A.
The cause of action arose from an automobile collision between a car owned by appellant, and driven by her son, and one owned by appellee, and driven by another person. The amended complaint filed by appellant alleged that the driver of appellee's car was negligent and had been formally charged with failure to yield the right of way; that there were no personal injuries; that there were damages to appellant's car to the extent of $774.95; and that the fair market value of the car was $250.00.
Appellant was insured with appellee, Manchester Insurance and Indemnity Company, but the policy did not provide for "basic or full" property damage coverage. Appellant alleged that the Manchester agent had not specifically explained to her the possible results of failing to include property damage coverage.
Fla. Stat. § 627.738, F.S.A., provides, in effect, that the traditional right of action in tort for property damage arising from an automobile accident is abolished, and one must look to property damage with one's own insurer, unless the plaintiff is one who
(1) has chosen not to purchase property damage insurance, and
(2) has suffered property damage in excess of $550.00.
In total, Fla. Stat. § 627.738, F.S.A., provides:
"(1) The owner of a motor vehicle as defined in § 627.732 is not required to maintain security with respect to property damage to his motor vehicle, but may elect to purchase either full or basic coverage for accidental property damage to his motor vehicle.
"(2) Every insurer providing security under §§ 627.730-627.741 shall offer the owner either full or basic coverage for accidental property damage to the insured motor vehicle, as follows:
"(a) Full coverage shall provide insurance without regard to fault for accidents occurring within the United States or its territories or possessions or Canada.
"(b) Basic coverage shall be limited to insurance against damage caused by the fault of another resulting from contact between the insured vehicle and a vehicle with respect to which security is required under §§ 627.730-627.741.
"(3) The insurer may include within the terms and conditions applicable to full or basic coverage such other provisions as it customarily applies to collision coverage for private passenger automobiles in other states, including deductibles without limitation.
"(4) Every owner, registrant, operator, or occupant of a motor vehicle with respect to which security has been provided as required by §§ 627.730-627.741, and every other person or organization legally responsible for the acts or omissions *3 of such an owner, registrant, operator, or occupant, is hereby exempted from tort liability for damages because of accidental property damage to motor vehicles arising out of the ownership, operation, maintenance, or use of such motor vehicle in this state. However, a person shall not be exempt from such liability if he was operating the motor vehicle without the express or implied consent of its owner or an insured under the owner's policy or if his willful and wanton misconduct was the proximate cause of the accident. This exemption applies only with respect to property damage to motor vehicles subject to §§ 627.730-627.741 but shall not be applicable as to a motor vehicle damaging a parked vehicle.
"(5) Notwithstanding subsection (4), an owner who has elected not to purchase insurance with respect to property damage to his motor vehicle may maintain an action of tort therefor against the owner, registrant, operator or occupant of a motor vehicle causing such damage if such damage exceeds five hundred and fifty dollars, and the insurer of an owner who has elected to purchase full or basic collision coverage for his motor vehicle shall have the right, if the damage to such motor vehicle exceeds the above amount, to recover the amount of the benefits it has paid and, on behalf of its insured, any deductible amount from the insurer of the owner, registrant, operator, or occupant of a motor vehicle causing such damage. The issues of liability in such a case and the amount of recovery shall be decided on the basis of tort law, and shall be determined by agreement between the insurers involved or, if they fail to agree, by arbitration."
The appellant in the case sub judice falls into that class of accident victims with no recourse against any person or insurer for loss caused by the fault of another, taking her allegations as true. She did not choose to purchase either "full or basic coverage for accidental property damage" to her automobile, and her damages were the fair market value of her automobile since repair costs cannot be recovered where they exceed the fair market value of the automobile before the collision. Blashfield, Automobile Law, Vol. 15, § 480.1, and 25 C.J.S. Damages § 82.
Appellant has raised numerous constitutional challenges to Fla. Stat. § 627.738, F.S.A. As appellant points out in her brief, the issues are limited to the single statute dealing with property damage, and the remainder of the Florida Automobile Reparations Act is not under consideration in the case sub judice.
It is likewise unnecessary for this Court to consider but one of the constitutional issues raised by appellant, for we find, as explained below, that Fla. Stat. § 627.738, F.S.A., fails to comply with a reasonable interpretation of Fla. Const., art. I, § 21, F.S.A., which reads as follows:
"The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."
This Court has never before specifically spoken to the issue of whether or not the constitutional guarantee of a "redress of any injury" (Fla. Const., art. I, § 21, F.S.A.) bars the statutory abolition of an existing remedy without providing an alternative protection to the injured party.
Corpus Juris Secundum provides:
"A constitutional provision insuring a certain remedy for all injuries or wrongs does not command continuation of a specific statutory remedy. However, in a jurisdiction wherein the constitutional guaranty applies to the legislature as well as to the judiciary, ... it has been held that the guaranty precludes the repeal of a statute allowing a remedy where the statute was in force at the time of the adoption of the Constitution. Furthermore, ... the guaranty *4 also prevents, in some jurisdictions, the total abolition of a common-law remedy." 16A C.J.S. Constitutional Law § 710, pp. 1218-1219.
This Court has held that the Declaration of Rights of the Constitution of the State of Florida does apply to State government and to the Legislature. Spafford v. Brevard County, 92 Fla. 617, 110 So. 451 (1926). The right to a cause of action in tort for negligent causation of damage to an automobile in a collision was recognized by statute prior to the adoption of the 1968 Constitution of the State of Florida, as evidenced by the fact that Fla. Stat. § 627.738, F.S.A., the statute under attack, specifically exempts owners and drivers of automobiles from tort liability for such damages. In addition, the cause of action for damage to property by force or violence  trespass vi et armis  was one of the earliest causes of action recognized at English Common Law.
It is essential, therefore, that this Court consider whether or not the Legislature is, in fact, empowered to abolish a common law and statutory right of action without providing an adequate alternative.
Upon careful consideration of the requirements of society, and the ever-evolving character of the law, we cannot adopt a complete prohibition against such legislative change. Nor can we adopt a view which would allow the Legislature to destroy a traditional and long-standing cause of action upon mere legislative whim, or when an alternative approach is available.
We hold, therefore, that where a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
It is urged that this Court has previously approved action by the Legislature which violated the rule which we have laid down. We disagree.
In McMillan v. Nelson, 149 Fla. 334, 5 So.2d 867 (1942), this Court approved the so-called "Guest Statute" which merely changed the degree of negligence necessary for a passenger in an automobile to maintain a tort action against the driver. It did not abolish the right to sue, and does not come under the rule which we have promulgated.
Workmen's compensation abolished the right to sue one's employer in tort for a job-related injury, but provided adequate, sufficient, and even preferable safeguards for an employee who is injured on the job, thus satisfying one of the exceptions to the rule against abolition of the right to redress for an injury.
The Legislature in 1945 enacted Fla. Stat. Ch. 771, F.S.A., which abolishes the rights of action to sue for damages for alienation of affections, criminal conversation, seduction or breach of promise. This Court upheld the validity of the chapter in Rotwein v. Gersten, 160 Fla. 736, 36 So.2d 419 (1948). The Court opined:
"The causes of action proscribed by the act under review were a part of the common law and have long been a part of the law of the country. They have no doubt served a good purpose, but when they become an instrument of extortion and blackmail, the legislature has the power to, and may, limit or abolish them." (Emphasis supplied) (p. 421)
Thus, in abolishing the right of action for alienation of affections, etc., the Legislature showed the public necessity required for the total abolition of a right to sue.
*5 The Legislature has not presented such a case in relation to the abolition of the right to sue an automotive tortfeasor for property damage. Nor has alternative protection for the victim of the accident been provided, as evidenced by the facts here before the Court.
Had the Legislature chosen to require that appellant be insured against property damage loss  as is, in effect, required by Fla. Stat. § 627.733, F.S.A., with respect to other possible damages  the issues would be different. A reasonable alternative to an action in tort would have been provided and the issue would have been whether or not the requirement of insurance for all motorists was reasonable. That issue is not before us.
Retaining the right of action for damages over $550.00 (Fla. Stat. § 627.738(5), F.S.A.) does not correct the constitutional infirmity, but merely gives rise to another argument, that appellant has been deprived of the equal protection of the law solely on the basis of the value of her automobile in violation of Fla. Const., art. I, § 2, F.S.A., and U.S.Const., amend. XIV, § 1. It is unnecessary to reach the merits of this contention because the statute under consideration has already failed constitutional muster on other grounds.
Accordingly, the decision of the trial court holding Fla. Stat. § 627.738, F.S.A., to be constitutional and denying appellant a cause of action against appellee is reversed, and the cause is remanded for further proceedings not inconsistent herewith.
It is so ordered.
ROBERTS, ERVIN and McCAIN, JJ., concur.
BOYD, J., dissents with opinion.
CARLTON, C.J., and DEKLE, J., dissent and concur with BOYD, J.
BOYD, Justice (dissenting):
I dissent.
The judgment of the trial court should be affirmed for the following reasons:
The first reason is relatively simple. Plaintiff sought a judgment against defendant Manchester Insurance and Indemnity Company, from which she had acquired an automobile insurance policy, which admittedly did not protect her against the loss of her car by collision. She had signed a waiver, declining to purchase property damage insurance, after such coverage was offered to her, as provided by law.[1] Since the offer of property *6 insurance protection was made to plaintiff, and since she rejected that offer, the claim against the company that it was negligently liable for her losses was properly dismissed as being without merit.
The second reason we should affirm the judgment of the trial court reaches the Constitutional question involved. The question as to the constitutionality of the section of the statute denying plaintiff the opportunity to sue defendant White, on the ground that plaintiff had declined to purchase her own collision insurance, and was, therefore, her own insurer to the extent of $550.00, is one of great importance.
Plaintiff claims that the statute, by denying her the opportunity to litigate against defendant White, violates § 21 of Article I of the Constitution of the State of Florida,[2] by denying "redress for an injury." This Court must determine whether the statute does indeed deny access to the courts in such a manner as to conflict with the foregoing constitutional provision. Obviously, a literal and dogmatic construction of said provision would deny both the Legislature and the Court the power to impose reasonable and logical limitations on the constitutional right to use the courts of Florida. It, of course, is assumed that the citizens who adopted the 1968 Constitution intended that the language therein be given the same construction as similar language in the prior Constitution of 1885.[3]
This Court has held that the right to maintain litigation is not absolute but, rather, is subject to reasonable restraints. We have repeatedly upheld statutes of limitation, which prevented aggrieved persons from litigating for redress of injury, unless the suits were filed within a time specified by Statute.[4]
In some instances, we have followed the principles of the Common Law to bar certain actions where, admittedly, wrongs have occurred. In Orefice v. Albert,[5] we noted that:
"It is an established policy, evidenced by many decisions, that suits will not be allowed in this state among members of a family for tort. Spouses may not sue each other, nor children their parents. The purpose of this policy is to protect family harmony and resources... ."[6]
In other instances, the law of Florida contains many decisions which have upheld *7 the constitutional validity of legislation modifying Common Law causes of action. In most of those decisions, the party presenting a constitutional challenge presented arguments similar to those of plaintiff in the present case. For example, in Rotwein v. Gersten,[7] legislation which completely abolished the causes of action for alienation of affections, criminal conversation, seduction, and breach of contract to marry was held to be proper and not prohibited by constitutional limitations. In Rotwein, this Court clearly stated that an individual does not have a vested interest or property right in a Common Law cause of action, and further noted that when a Common Law cause of action becomes an instrument of abuse, the Legislature can enact the necessary modifications.
The Florida "Guest Statute"[8] was also upheld in the face of constitutional attacks prior to its recent repeal by the Legislature. Prior to the enactment of the "Guest Statute," an individual could maintain a Common Law cause of action for the negligence of a driver of the vehicle in which he was riding. The "Guest Statute" modified such cause of action by relieving the driver from tort liability for ordinary negligence. In McMillan v. Nelson,[9] constitutional challenges were presented, urging, among other things, that the legislation deprived individuals of remedy under law, and violated equal protection and due process requirements. This Court rejected such arguments, and upheld the validity of the statute.
Finally, another instance of the latter type is the Workmen's Compensation Act.[10] Under that Act, an injured workman is provided a schedule of benefits from his employer without reference to the cause of injuries arising out of the course of his employment. The concept of "fault" has been eliminated. Despite the fact that they modify Common Law causes of action, such laws have universally been held to be a legitimate and constitutional exercise of legislature power.[11]
Recently, in the landmark decision of Pinnick v. Cleary,[12] the Supreme Judicial Court of Massachusetts upheld that state's newly-enacted no-fault insurance law. As Florida's law provides that those who decline to purchase property insurance coverage may sue to recover for collision damage only when such damage exceeds $550.00, the Massachusetts law, in an analogous manner, provided that those who elected a deductible in their otherwise compulsory medical payments coverage, could sue to recover for "pain and suffering" only when total medical expenses exceeded $500.00. The Massachusetts court noted that:
"The only limitation imposed by c. 670 on the potential plaintiff's prior right of recovery at common law is the elimination of damages for `pain and suffering, including mental suffering associated with * * * injury' except in certain specified categories of cases. Section 5 of c. 670 provides generally that the reasonable and necessary medical expenses incurred by a plaintiff in the treatment of his injuries must be over $500 to permit recovery for pain and suffering. However, recognizing that certain types of injuries could entail considerable pain and suffering which would warrant monetary compensation regardless of medical expense incurred, the Legislature provided by way of exception to the general rule that damages for pain and suffering *8 could be sought in all cases involving five designated types of injuries. These are a fracture, injury causing death, injury consisting in whole or in part of loss of a body member, permanent and serious disfigurement, and injury resulting in loss of sight or hearing as elsewhere defined in the General Laws. The victim whose injury falls outside these categories and whose medical expenses are less than $500 cannot recover at all for pain and suffering. However, it is still possible for the person who desires to assure for himself recovery in excess of his out-of-pocket costs to do so. Just as he may elect a deductible if he has medical payments insurance to avoid duplicate recovery for medical expenses, so he may choose to keep both forms of insurance in full precisely to allow himself double recovery of these expenses. Other forms of duplicate coverage are equally possible. It is true that the amount of excess he will receive thereby will bear no necessary relation to the value of his pain and suffering as arbitrarily set by a jury but, on the other hand, he is assured of some profit over out-of-pocket expenses in every motor vehicle accident. This certainty he was never afforded by his prior `right' to recovery for pain and suffering in a suitable case, which in order to be realized even in such a case had to be actively pursued at considerable expense."[13]
Additionally, the Pinnick case is of particular interest because the arguments raised against the Massachusetts law mirror those made against the Florida law. It was argued that the Massachusetts law was defective in that it altered a vested property right, i.e., the tort action. The Massachusetts court rejected this argument:
"In arguing that the cause of action affected by c. 670 constitutes a vested property right, the plaintiff seems to ignore the distinction between a cause of action which has accrued and the expectation which every citizen has if a legal wrong should occur to find redress according to the rules of statutory and common law applicable at that time. The Legislature is admittedly restricted in the extent to which it can retroactively affect common law rights of redress which have already accrued. However, there is authority in abundance for the proposition that `[n]o person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit.' New York Cent. R.R. v. White, 243 U.S. 188, 198, 37 S.Ct. 247, 250, 61 L.Ed. 667; Munn v. Illinois, 94 U.S. 113, 134, 24 L.Ed. 77. And, as we shall demonstrate in more detail below, legislative actions based on this principle, prospectively modifying or abrogating common law causes of action, have been judicially upheld both in this Commonwealth and elsewhere on numerous occasions. The citizen may find that events occurring after passage of such a statute place him in a different position legally from that which he would have occupied had they occurred before passage of the statute. He has no cause, however, to complain solely because his rights are not now what they would have been before."[14]
It was also argued that the Massachusetts law was defective in that it did not provide for a reasonable substitution for prior rights under the Common Law. The Massachusetts Court also rejected this argument:
"We are urged to apply a test derived largely from the suggestion in New York Cent. R.R. v. White, 243 U.S. 188, 201, 37 S.Ct. 247, 252, 61 L.Ed. 667, that a State might not have the power under the due process clause `suddenly [to] set aside all common-law rules respecting liability as between employer and employee, without providing a reasonably just substitute. * * * [I]t perhaps may be doubted whether the State could *9 abolish all rights of action on the one hand, or all defenses, on the other, without setting up something adequate in their stead.' The proposed test may best be considered and understood, therefore, in the light of the facts before the court in that case.
"The Workmen's Compensation Act dealt with in the White case substituted an administrative system of compensation for the common law rights of employees engaged in hazardous employments. The new system was compulsory on both employers and employees. The employee injured or killed in the course of his employment was entitled to a fixed compensation according to a prescribed schedule without regard to fault in almost every case. At common law the employee's rights against his employer were considerably circumscribed in fact by certain defences available to the employer. Where he could succeed in making out a case, however, the employee stood to gain a great deal more from a jury than he would receive under workmen's compensation. Viewing the overall operation and effect of the statute on both parties affected by it, the court indicated that the exchange of rights was adequate. With respect to the statute's effect on employees, it gave the following reasons: `If the employee is no longer able to recover as much as before in case of being injured through the employer's negligence, he is entitled to moderate compensation in all cases of injury, and has a certain and speedy remedy without the difficulty and expense of establishing negligence or proving the amount of the damages.' P. 201, 37 S.Ct. p. 252.
"It is immediately apparent that c. 670 alters prior legal rights to a much less drastic extent than did the act involved in the White case."[15]
Finally, it was argued that the Massachusetts law was defective in that it conflicted with a Massachusetts constitutional provision, quite similar to Florida's Article I, Section 21, guaranteeing "redress for an injury."[16] This argument, too, was rejected by the Massachusetts court:
"Article 11 of the Declaration of Rights guarantees `a certain remedy, by having recourse to the laws, for all injuries or wrongs which * * * [one] may receive * * *.' The article is clearly directed toward the preservation of procedural rights and has been so construed. See, e.g., Cressey v. Erie R.R., 278 Mass. 284, 291, 180 N.E. 160; Universal Adjustment Corp. v. Midland Bank, Ltd., 281 Mass. 303, 320, 184 N.E. 152; Commonwealth v. Hanley, 337 Mass. 384, 387, 149 N.E.2d 608. The only intimation which has been cited to us that it might have ramifications in the area of substantive rights is a dictum in Commonwealth v. Boston Transcript Co., 249 Mass. 477, 482, 144 N.E. 400, that the Legislature might be precluded under art. 11 from abolishing an action for libel in certain circumstances as it had purported to do. However, changes in prior law are necessary in any ordered society, and to argue that art. 11 prohibits alterations of common law rights as such, especially in the face of the specific provision to the contrary in art. 6, flies in the face of all reason and precedent. To the extent that the dictum in the Boston Transcript case is to the contrary we decline to follow it."[17]
*10 This Court is compelled to take notice of the controversy which existed for long years, relating to insurance rates and practices. A high percentage of the cases in Florida courts arose from tort claims, and these cases imposed upon the litigants the burdens of investigation of accidents, trials, appeals, and attendant legal fees. During all of this process, of course, the victims entitled to economic relief were required to "sweat out" the outcome. A better system was not only needed, but became mandatory. After extensive investigation, hearings, and study, the Legislature enacted the present no-fault law. Prior to the enactment of our Workmen's Compensation Laws, similar legal machinations commonly caused long delays, and injured employees (in situations analagous to those injured or damaged by automobiles, and seeking redress under our insurance laws prior to the enactment of the no-fault law) were often required to accept unjust amounts in quick settlements to prevent long delays. For the greater good of society and social justice, the Legislature thus enacted both our Workmen's Compensation Law, and the no-fault insurance statute sub judice.
Surely the Legislature could have made it mandatory for all automobile owners to acquire collision insurance.[18] Obviously, if the state can require an owner to acquire insurance to absorb his losses, it can permit that same owner, at his discretion, either to acquire said insurance, or to be his own insurer. The Supreme Judicial Court of Massachusetts seemed to have our no-fault law in mind when, in Pinnick v. Cleary, supra, it noted that:
"Those who challenge c. 670 have attributed to it not only a drastic stripping of legal rights but also, in its practical effect, a substantial diminution of the damages which the average non-negligent accident victim may reasonably expect. Analysis demonstrates, on the contrary, that the Legislature has acted with extreme caution in altering prior legal rights, changing in only one respect the elements of damage which are recoverable by the victim. As to the practical effect of c. 670, it appears that the statute affords the citizen the security of prompt and certain recovery to a fixed amount of the most salient elements of his out-of-pocket expenses and an increased flexibility. ..."[19]
I believe that the trial court was correct in dismissing the complaint and holding Section 627.738, Florida Statutes, 1971, F.S.A., constitutional. The judgment of the trial court should be affirmed.
I therefore dissent to the majority opinion.
CARLTON, C.J., and DEKLE, J., concur.
NOTES
[1] Section 627.738(1)(2), Florida Statutes, 1971, F.S.A. Rule 4-27.11 of the Rules promulgated and adopted by the Insurance Commissioner on December 7, 1971, provides:

"4-27.11 Proof that insurers required to provide security under the Florida Automobile Reparations Reform Act have offered full (Collision insurance) or basic (basic property protection) coverage for accidental property damage to the insured motor vehicle.  When an insurer issues a policy providing security under the Florida Automobile Reparations Reform Act and such policy does not contain either collision insurance or basic property protection, the insurer shall have secured from the named insured a signed rejection form, which the insurer shall retain in its files. Unless the named insured subsequently requests such coverage in writing, such coverage need not be provided in or supplemental to the renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer. The rejection form shall contain the following text:
"REJECTION OF BASIC PROPERTY PROTECTION AND COLLISION INSURANCE
"The named insured acknowledges and agrees that (1) the Company has offered to provide basic property protection coverage or collision insurance; and (2) the named insured hereby rejects this offered coverage; and in effecting this rejection, the named insured acknowledges and understands that the Florida Automobile Reparations Reform Act may preclude recovery from others for accidental property damage to the automobile.
 "Signed ______________________
 Named Insured"

[2] "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."
[3] § 4 of the Declaration of Rights in the 1885 Constitution provided:

"All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered [sic] without sale, denial or delay."
[4] See, e.g., In re Brown's Estate, 117 So.2d 478 (Fla. 1960); Campbell v. Horne, 147 Fla. 523, 3 So.2d 125 (1941). Both of these cases were decided in light of Art. III, § 33 of the 1885 Constitution.

"No statute shall be passed lessening the time within which a civil action may be commenced on any cause of action existing at the time of its passage."
The current applicable provision, Art. III, § 11(a)(7) of the 1968 Constitution, retains only one restriction upon the Legislature's power to alter the statutes of limitation  that such alteration may not be accomplished by means of a special law.
[5] 237 So.2d 142 (Fla. 1970).
[6] Id. at 145. See, e.g., Bencomo v. Bencomo, 200 So.2d 171 (Fla.), cert. denied, 389 U.S. 970, 88 S.Ct. 466, 19 L.Ed.2d (1967); Shiver v. Sessions, 80 So.2d 905 (Fla. 1955); Sullivan v. Sessions, 80 So.2d 706 (Fla. 1955); Corren v. Corren, 47 So.2d 774 (Fla. 1950).
[7] 160 Fla. 736, 36 So.2d 419 (1948).
[8] Section 320.59, Florida Statutes, 1971  repealed by § 1, ch. 72-1, Laws of Florida.
[9] 149 Fla. 334, 5 So.2d 867 (1942).
[10] Chapter 440, Florida Statutes, 1971, F.S.A.
[11] See, e.g., Mullarkey v. Florida Feed Mills, Inc., 268 So.2d 363 (Fla. 1972); Carter v. Sims Crane Service, Inc., 198 So.2d 25 (Fla. 1967); Wilson v. McCoy Mfg. Co., 69 So.2d 659 (Fla. 1954); South Atlantic S.S. Co. v. Tutson, 139 Fla. 405, 190 So. 675 (1939).
[12] 271 N.E.2d 592 (Mass. 1971).
[13] Id. at 598-599. (Footnotes omitted) (Emphasis supplied.)
[14] Id. at 599-600.
[15] Id. at 605-606. (Footnotes omitted) (Emphasis supplied.)
[16] Mass.Const., pt. 1 Art. XI, providing:

"Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."
[17] 271 N.E.2d at 600. (Footnote omitted.)
[18] Cf., Williams v. Newton, 236 So.2d 98 (Fla. 1970), discussing the validity of Chapter 324, Florida Statutes, F.S.A., the Financial Responsibility Law.
[19] 271 N.E.2d at 597. (Emphasis supplied.)