## CROOK v. ROMAGUERA, et al.

Case No. 85-1089 CA (L)

Fifteenth Judicial Circuit, Palm Beach County

July 9, 1985

### APPEARANCES OF COUNSEL

**Anthony J. McNicholas, III, Stephens, Lynn, Chernay & Klein, P.A.,** and **Charles C. Powers** for defendant Romaguera.

**James S. Haliczer, Conrad, Scherer & James,** for defendant Doctors' Hospital.

**Joel S. Cronin, M.D., Cone, Wagner, Nugent, Johnson, Haxouri & Roth, P.A.,** for plaintiff.

### OPINION OF THE COURT

VAUGHN J. RUDNICK, Circuit Judge.

The Defendants, Raul Romaguera, M.D. and Raul Romaguera, M.D., P.A. move the court to dismiss the complaint upon the ground it is time barred pursuant to the limitation periods set forth in F.S. 95.11(4)(b) which became effective May 20, 1975. The court disagrees with the contention of the defendants for the reasons more fully set forth below.

Counsel have submitted to the court extensive memoranda of law,

advising the court the question presented is one of first impression and they are aware of no similar action presently pending in any of the appellate courts within our state.

As our Legislature has seen fit to amend the statute under consideration with a great deal of frequency, the court sets it out in full:

"CHAPTER 75-9 . . . Section 7 . . . Subsection (4) . . . (b) An action for medical malpractice shall be commenced within two years from the time the incident occurred giving rise to the action, or within two years from the time the incident is discovered, or should have been discovered with the exercise of due diligence, provided, however, that in no event shall the action be commenced later than four years from the date of the incident or occurrence out of which the cause of action accrued. An action for medical malpractice is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care. The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care. In those actions covered by this paragraph where it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury within the four-year period, the period of limitations is extended forward two years from the time that the injury is discovered or should have been discovered with the exercise of due diligence, but in no event to exceed seven years from the date the incident giving rise to the injury occurred."

Counsel, in their memoranda, have cited several appellate decisions emanating from the state courts, however, each must be read with a great deal of caution in relation to the particular statute that the decision has under consideration; for the supporting rationale of the appellate decisions becomes diluted or unsupportable as a result of legislative amendment.

The complaint under consideration sounds in medical malpractice arising from the alleged misdiagnosis of a surgical specimen, a tumor removed from the thigh of the Plaintiff, Ronald L. Crook, on or about December 7, 1980, and sent to the pathology laboratory of a hospital where it was examined and read by the Defendant, Raul Romaguera, M.D. Soon thereafter the doctor submitted a written report of his finding that the tumor was benign, which report became a part of plaintiff's hospital record and was also submitted to the operating surgeon. Plaintiff was advised of Dr. Romaguera's conclusions.

81

On or about January 7, 1985, the same surgeon informed plaintiff he had a recurrence of the tumor in his right leg and more than likely it was malignant and had been malignant when it had been originally operated upon in December of 1980. The complaint was filed February 12, 1985.

The complaint was filed four years and two months after the occurrence of the "incident" complained of, however, one month after its alleged discovery and there is no effort within the complaint to allege fraud, concealment or intentional misrepresentation of fact.

The bastion upon which this legal challenge centers itself is the repose provision of the statute under consideration, as distinguished from those provisions which are more frequently referred to as a statute of limitations.

The Florida Supreme Court has recognized the validity of Statutes of Repose in very limited circumstances when it held:

> "Where a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the state pursuant to Fla. Stat., Section 2.01 F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown." *Kluger v. White*, 281 So.2d 1 (Fla. 1973).

This philosophy was recently reiterated by the same court in the case of *Universal Engineering Corp. v. Perez*, 451 So.2d 463 (Fla. 1984) when it quoted:

> "This court based its decision in Overland on a finding that the Legislature had not expressed an overpowering public necessity for the prohibitory provision, and an absence of less onerous alternatives."

While our Supreme Court has recognized the validity of a True Statute of Repose and acknowledged its distinction from a Statute of Limitations, it has consistently either avoided ruling upon the issue, or simply refused to apply it, notwithstanding the many efforts expressed by the Legislature of the State of Florida. Justice Sundberg, writing for the majority of the court, acknowledged the difference between a True Statute of Repose and a Statute of Limitations when he stated:

> "Second, and more important, that case did not deal with a 'final

82

repose' provision which is completely unrelated to discovery of the injury. While the date of discovery is entirely relevant in ascertaining the attachment date of a statute of limitations which measures from that date, it is equally irrelevant in ascertaining the attachment date of a statute of limitations which measures by its terms the date of the incident giving rise to the injury. The only relevant date in the case of the latter type statute of limitations is the date of occurrence or incident." *Dade County v. Ferro*, 384 So.2d 1283 (Fla. 1980)

In the same case the Supreme Court avoided the issue when it stated:

"There are two issues presented by this petition for certiorari. First, whether the four year absolute bar contained in Section 95.11, subparagraph 4, subparagraph b, Florida Statutes (1975), is applicable to the facts of this cause as found by the trial judge. Second, if applicable to this case, whether the four year absolute bar to medical malpractice claims contained in Section 95.11(4)(b) unconstitutionally denies a claimant access to the courts under Article I, Section 21, of the Florida Constitution. Because we resolved the first issue adversely to the ruling of the trial court, it is unnecessary to reach the second issue presented." *Dade County v. Ferro*, supra.

The Supreme Court had, on an earlier occasion, the opportunity to address the history and purpose surrounding the passage of the act under consideration, but under different circumstances. In the case of *Carter v. Sparkman*, 335 So.2d 802 (Fla. 1976), in upholding the validity of the statute the Supreme Court included within its opinion the following:

"Although courts are generally opposed to any burden being placed on the rights of aggrieved persons to enter the courts because of the constitutional guaranty of access, there may be reasonable restrictions prescribed by law. Typical examples are the fixing of time within which suit must be brought. . . . Cases are legend which hold that the police power of the state is available in the area of public health and welfare, and we must, therefore, consider matters pursued under the law sub judice as being separate and distinct from those generally flowing from the market place. At the time of enactment of the legislation in question sub judice, there was an imminent danger that a drastic curtailment in the availability of health care services would occur in this state. The Legislature's recognition of the crisis in the area of medical care and the need for legislation for the benefit of public health in this state is evidenced by the Preamble to Chapter 75-9, Laws of Florida, as follows:

83

'WHEREAS, the cost of purchasing medical professional liability insurance for doctors and other health care providers has skyrocketed in the past few months; and

'WHEREAS, it is not uncommon to find physicians in high-risk categories paying premiums in excess of $20,000 annually; and

'WHEREAS, the consumer ultimately must bear the financial burdens created by the high cost of insurance; and

'WHEREAS, without some legislative relief doctors will be forced to curtail their practices, retire, or practice defensive medicine at increased cost to the citizens of Florida; and

'WHEREAS the problem has reached crises proportion in Florida, NOW THEREFORE',

the Legislature felt it incumbent upon itself to attempt to resolve the crises through exercise of the police power for the general health and welfare of the citizens of this state and accordingly enacted Chapter 75-9, Laws of Florida, to effectuate that purpose."

Subsequent to the foregoing pronouncement, the Supreme Court, each time when confronted with the application of a "True Statute of Repose", while upholding the validity of the statute, has ruled it was being unconstitutionally applied in violation of the state's constitutional guarantee of access to the courts. See *Diamond v. E.R. Squibb and Sons, Inc.*, 397 So.2d 671 (Fla. 1981) and *Cates v. Graham*, 451 So.2d 475 (Fla. 1984). In the latter case, which is the most recent pronouncement upon this subject, the Supreme Court stated:

"The real question is whether a five- to six-month period remaining after the discovery of any injury is so short that to enforce the terms of the statute would result in a denial of access to the courts and hence make subsection 95.11(4)(b) unconstitutional as applied.

In Bauld v. J.A. Jones Construction Co., 357 So. 2d 401 (Fla. 1978), we found constitutional a parallel statute, subsection 95.11(3)(c). In doing so we held that a statute of repose is constitutional and does not bar access to the courts when it merely curtails the time within which suit must be filed, as opposed to barring the cause of action entirely." See also *Cobb v. Maldonado*, 451 So. 2d 482 (Fla. 4th DCA 1984); *Pisut v. Sichelman*, 455 So.2d 620 (Fla. 2d DCA 1984) and *Phelan v. Hauft*, (3rd DCA), 10 FLW 1595, July 5, 1985.

The latest pronouncements by our appellate tribunals, on the one hand acknowledge the validity of a "True Statute of Repose" where notice of the nature of the injury is totally irrelevant; yet, in each of the decisions the appellate philosophy is quite clear, that such statutes

84

will be ruled to be unconstitutional as applied if the injured person is not given any opportunity to pursue his claim in the courts of this state. It is thereupon,

ADJUDGED:

1. Motions to dismiss this complaint for failure to state a cause of action and judgment on the pleadings are denied as the statute applied to the facts as alleged in the complaint which must be taken as true, is unconstitutional as applied.

2. Defendants have fifteen days from the date of this order to answer the complaint.