PARIENTE, J.,
specially concurring.
I agree with the majority that the Financial Agreement that the patient was required to sign takes away the patient’s significant statutory rights without providing the commensurate benefit of requiring the defendant to admit liability, as specifically envisioned by the Medical Malpractice Statute. For this reason, the Financial Agreement violates the public policy of Florida, as embodied in the Medical Malpractice Statute.
Specifically, this Financial Agreement forces the patient to forego his or her right to pursue a claim in a court of law and limits the amount of recoverable damages — without requiring the defendant to admit liability or to give up any other rights in return. Conversely, the Financial Agreement under review relieves the defendant of the burden and expense of proceeding to a jury trial and still limits the amount of damages that must be paid — without providing any benefit to the patient in return. In other words, this Financial Agreement undermines the legislative balance of incentives in the comprehensive medical malpractice statutory scheme, and for that reason is void as against the public policy underpinning the Medical Malpractice Statute.
As set forth in chapter 766, if a defendant agrees to admit liability, a patient is required to give up the right to sue in a court of law and must arbitrate his or her claims, and the patient is also subject to limitations on recoverable damages. See § 766.207, Fla. Stat. (2008). In turn, the Legislature envisioned that with a defendant’s admission of liability, a patient’s risk of recovering nothing would be eliminated. The legislative scheme also envisioned that the admission of liability would reduce the expenses of litigation and expedite the process of resolving the dispute.
In contravention to the carefully crafted statutory scheme set forth in chapter 766, the Financial Agreement under review requires the patient to arbitrate his or her claims in exchange for absolutely nothing in return — no elimination of the risk of not recovering any damages through the defendant’s admission of liability, no guarantee of a reduction in the expenses inherent *1252 in proving a medical malpractice claim, and no assurance that the dispute will be resolved quickly — while still subjecting the patient to the cap on damages. This result is contrary to the public policy of Florida, as expressed in the Medical Malpractice Statute.
The Legislature expressly stated that its intent in enacting the Medical Malpractice Statute was to “provide a plan for prompt resolution of medical negligence claims.” § 766.201(2), Fla. Stat. (emphasis added). The Legislature provided that “[arbitration shall be voluntary and shall be available except as specified.” Id. As set forth in the legislative findings allowing for arbitration, the Legislature found that arbitration would provide incentives and benefits to both parties:
(b) Arbitration shall provide:
1. Substantial incentives for both claimants and defendants to submit their cases to binding arbitration, thus reducing attorney’s fees, litigation costs, and delay.
2. A conditional limitation on noneco-nomic damages where the defendant concedes willingness to pay economic damages and reasonable attorney’s fees.
3. Limitations on the noneconomic damages components of large awards to provide increased predictability of outcome of the claims resolution process for insurer anticipated losses planning, and to facilitate early resolution of medical negligence claims.
Id. Thus, the Legislature envisioned a plan in which there would be the following give- and-take in order to provide for the prompt resolution of claims and to reduce costs: (1) “[substantial incentives for both claimants and defendants ” to submit to arbitration, which would reduce attorney’s fees, litigation costs, and delay; (2) a conditional limitation on noneconomic damages in exchange for the defendant conceding to pay economic damages and reasonable attorney’s fees; and (3) limitations on the noneconomic damages “to provide increased predictability ” and “facilitate early resolution of medical negligence claims.” § 766.201(2)(b), Fla. Stat. (emphasis added).
Chapter 766 withstood constitutional scrutiny with respect to a patient’s right of access to the courts for the following reason: “[T]he statutes at issue provide a commensurate benefit to the plaintiff in exchange for the monetary cap.” Univ. of Miami v. Echarte, 618 So.2d 189, 190 (Fla.1993) (emphasis added). “Commensurate benefit” to the injured party is the linchpin of the constitutional analysis where the statutory scheme restricts the right of access to courts. See Smith v. Dep’t of Ins., 507 So.2d 1080, 1087-88 (Fla.1987); see also Kluger v. White, 281 So.2d 1, 3-4 (Fla.1973). The “commensurate benefit” of the monetary cap on noneconomic damages if both parties agree to arbitration under the statute was explained as follows in Echarte:
The initial question in the instant case is whether the arbitration statutes, which include the non-economic damage caps found in sections 766.207 and 766.209, provide claimants with a “commensurate benefit” for the loss of the right to fully recover non-economic damages. Sections 766.207 and 766.209 only limit a claimant’s right to recover non-economic damages after a defendant agrees to submit the claimant’s action to arbitration. The defendant’s offer to 'have damages determined by an arbitration panel provides the claimant with the opportunity to receive prompt recovery without the risk and uncertainty of litigation or having to prove fault in a civil trial. A defendant or the defendant’s insurer is required to conduct an investigation to determine *1253 the defendant’s liability within ninety days of receiving the claimant’s notice to initiate a malpractice claim. § 766.106(3)(a). Before the defendant may deny the claimant’s reasonable grounds for finding medical negligence, the defendant must provide a verified written medical expert opinion corroborating a lack of reasonable grounds to show a negligent injury. § 766.203(3)(b). The claimant benefits from the requirement that a defendant quickly determine the merit of any defenses and the extent of its liability. The claimant also saves the costs of attorney and expert witness fees which would be required to prove liability. Further, a claimant who accepts a defendant’s offer to have damages determined by an arbitration panel receives the additional benefits of: 1) the relaxed evidentiary standard for arbitration proceedings as set out by section 120.58, Florida Statutes (1989); 2) joint and several liability of multiple defendants in arbitration; 3) prompt payment of damages after the determination by the arbitration panel; 4) interest penalties against the defendant for failure to promptly pay the arbitration award; and 5) limited appellate review of the arbitration award requiring a showing of “manifest injustice.”
Echarte, 618 So.2d at 194. In other words, the Legislature envisioned that arbitration under the statute would give injured parties the right to a prompt resolution of their disputes because the defendant would have to admit liability. This in turn would save the injured party costs in the form of increased attorney’s fees and the expenditure of expert witness fees that would otherwise be required in order to prove liability.
It is therefore clear from a full review of the Medical Malpractice Statute that the legislative quid pro quo for patients in exchange for both a substantial limitation on noneconomic damages to a maximum of $250,000 per incident and the right to a jury trial was that a defendant would be required to admit liability. This clearly expressed public policy in the statute, however, has been expressly contravened by the Financial Agreement in this case, which eviscerates statutory rights without providing the injured patient with any of the added benefits or incentives provided for by the Legislature. Further, by requiring arbitration without in turn requiring the counter-balance of the defendant admitting liability, the Financial Agreement undermines the public policy set forth in the statute of reducing attorney’s fees, litigation costs, and delay.
The Financial Agreement in this case destroys the essence of the legislative scheme providing for arbitration and limiting damages along with an admission of liability, as well as the Legislature’s stated goal of providing a uniform and efficient procedure for the “prompt resolution of medical negligence claims.” § 766.201(2), Fla. Stat. (emphasis added). Because this Financial Agreement eviscerates the major benefit provided by the Legislature of requiring an admission of liability from the defendant, while still limiting the patient’s noneconomic damages, this Financial Agreement is contrary to public policy and is in express contravention of the arbitration provisions of the Medical Malpractice Statute. For all those reasons, I concur in the majority.