FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2022-3567
_____

EUGENE GARTMAN, ADRIENNE
GARTMAN,

    Appellants,

    v.

SOUTHERN TACTICAL RANGE,
LLC, BITN, LLC,

    Appellees.

_____


On appeal from the Circuit Court for Okaloosa County.
Mary Polson, Judge.


July 23, 2025

NORDBY, J.


Adrienne and Eugene Gartman want to sue their new neighbor for nuisance. For almost two decades, the couple enjoyed living on their property in rural Okaloosa County. Then Appellees purchased an adjoining property, constructed a private shooting range, and opened for business. So the Gartmans sued the Range and raised a nuisance claim, arguing that the Range's operations cause unreasonable noise that interferes with the Gartmans' use and enjoyment of their property. But the trial court refused to even consider the merits of their claim. Relying on section 823.16, Florida Statutes—which expressly exempts sport shooting ranges from civil liability in "any matter" related to noise and declares

such ranges are "not subject to an action for nuisance"—the trial court granted summary judgment for the Range on the Gartmans' noise-based nuisance claim. We now must consider whether section 823.16, as applied to the Gartmans, denies their right to access the courts under article I, section 21 of the Florida Constitution. We conclude that it does, and we reverse the portion of the trial court's order granting judgment on the noise-based nuisance claim and remand for further proceedings. We affirm as to all other issues raised.

## I.

In 1998, Adrienne and Eugene Gartman purchased eighty acres of property in Holt, Florida, a rural community in Okaloosa County. The Gartmans live on this land. Their personal residence is at the center of the property and along the parcel's southern boundary sits a substantial system of barns and other outbuildings. These structures house farm equipment, horse stables, and a bunkhouse for workers. Other portions of the cleared property are used to pasture horses, cattle, and other animals. The Gartmans' children and grandchildren visit the property often to enjoy recreational activities and learn about agriculture.

In 2017, nearly twenty years after the Gartmans bought their property, BITN, LLC, and its subsidiary company, Southern Tactical Range, LLC, purchased about two hundred acres of adjoining land immediately south of the Gartmans' property. They soon began to permit and construct the Range, now known as the Element Training Complex. The Range opened for business in 2018, offering 240 shooting stations, along with long range sniper shooting, machine gun training, 360-degree rifle and pistol events, and cowboy shooting events. At first for civilian use, the Range became a contracted facility for both military and law enforcement training activities as well.

While the Range was still under construction, the Gartmans sued for private nuisance, seeking a permanent injunction and damages. The Range moved to dismiss the complaint, arguing that the Gartmans failed to state a cause of action for nuisance because operations had not yet begun. Once the Range opened for business, the Gartmans amended their complaint, alleging that the Range's

operations and noise significantly interfered with their daily lives and activities, such as working in their yard, eating meals, watching television, and reading.

The Range moved for summary judgment, arguing in part that it was immune from liability for noise-related nuisances under sections 823.16(2) and (3), Florida Statutes (2018). The Gartmans responded by arguing that section 823.16 was unconstitutional as applied to them and violated their due process rights and right to access the courts under article I, section 21 of the Florida Constitution. After a hearing, the trial court found that the Range qualified for the exemption from civil liability under section 823.16(2) and concluded that the Gartmans' noise claims were non-actionable, in nuisance or otherwise. The trial court also found that the Range qualified as a "sport shooting range" under section 823.16(1)(c), that it was permitted as a gun range, and complied with the local noise control laws. Without explanation, the trial court also rejected the Gartmans' as-applied constitutional challenge to section 823.16 under Florida's access-to-courts provision.

The case proceeded on several other remaining claims. Eventually, the trial court concluded that the Range was entitled to summary judgment on all issues, declining the Gartmans any relief. This appeal follows.

II.

Because this case turns on a question of constitutional and statutory interpretation, our review is de novo. *W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So. 3d 1, 8 (Fla. 2012); *see also Medina v. Gulf Coast Linen Servs.*, 825 So. 2d 1018, 1020 (Fla. 1st DCA 2002).

A.

Florida's Constitution provides that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Art. I, § 21, Fla. Const. (1968). Since 1838, when the first constitutional delegation convened in St. Joseph (now Port St. Joe), all but one of Florida's constitutions have contained some version of this "access to courts"

3

provision, expressly guaranteeing citizens the right to seek redress of their injuries in court.[1]

---

[1] Florida's Reconstruction-era Constitution of 1868 did not contain any "access to courts" language, but the provision reappeared in Florida's 1885 Constitution.

| Version | Language |
|---|---|
| Art. I, § 9, Fla. Const. (1838). | "That all Courts shall be open, and every person, for an injury done him, in his lands, goods, person, or reputation, shall have remedy by due course of law; and right and justice, administered without sale, denial, or delay." |
| Art. I, § 9, Fla. Const. (1861). | "That all Courts shall be open, and every person, for an injury done him, in his lands, goods, person or reputation, shall have remedy by the due course of law; and right and justice administered without sale, denial or delay." |
| Art. I, § 9, Fla. Const. (1865). | "That courts shall be open, and every person, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law; and right and justice administered without sale, denial or delay." |
| Art. I, § 4, Fla. Const. (1885). | "All courts in the State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be |

Today, the access-to-courts clause limits the ability of the Legislature to abolish causes of actions that existed at the time of the adoption of the Florida Constitution. *Kluger v. White*, 281 So. 2d 1, 4 (Fla. 1973). The Florida Supreme Court has explained that the date to determine whether a right of action predates the Florida Constitution is November 5, 1968, when the current right to court access was adopted. *Eller v. Shova*, 630 So. 2d 537, 542 n.4 (Fla. 1993) ("[W]hen reviewing article I, section 21, of the Florida Constitution, one must look to the common law as it existed on November 5, 1968."). Accordingly, we apply the Florida Supreme Court's *Kluger* test to constitutional access-to-courts challenges. *See Kluger*, 281 So. 2d at 4. This test provides:

> [W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the Statute pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.

| | administered without sale, denial or delay." |
|---|---|
| Art. I, § 21, Fla. Const. (1968). | "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." |

*Id.* at 4; *see also Warren v. State Farm Mut. Auto, Ins.*, 899 So. 2d 1090, 1097 (Fla. 2005); *Doss v. United Parcel Servs.*, 331 So. 3d 216, 218 (Fla. 1st DCA 2021).

## B.

This brings us to the challenged statute: section 823.16, Florida Statutes. In 1999, the Florida Legislature enacted section 823.16, prohibiting nuisance actions against sport shooting ranges. The statute, which has never been amended, defines a sport shooting range as "an area designed and operated for the use of rifles, shotguns, pistols, silhouettes, skeet, trap, black powder, or any other similar type of sport shooting."

Relevant to the Gartmans' nuisance claim, the statute goes on to provide that:

> A person who operates or uses a sport shooting range is not subject to an action for nuisance, and a court of this state shall not enjoin the use or operation of a sport shooting range on the basis of noise or noise pollution, if the range is in compliance with any noise control laws or ordinances that applied to the range and its operation at the time of construction or initial operation of the range.

§ 823.16(3), Fla. Stat. (2018). Additionally, section 823.16 exempts sport shooting ranges from civil liability and criminal prosecution based on noise pollution, and exempts sport shooting ranges from state and agency noise regulations. § 823.16(2), Fla. Stat.

## III.

On appeal, the Gartmans argue that subsections 823.16(2) and (3), Florida Statutes, as applied to them, violate their right to access the courts under the Florida Constitution.[2] We agree.

---

[2] As required under Florida Rule of Civil Procedure 1.071 and Florida Rule of Appellate Procedure 9.425, the Gartmans provided notice of their constitutional challenge to Florida's Office of the

6

As applied to the Gartmans, these two provisions of section 823.16 eliminate their ability to bring a noise-based nuisance claim against the Range. Subsection (3) expressly declares that a "person who operates . . . a sport shooting range is not subject to an action for nuisance." It further prohibits any Florida court from enjoining the "operation of a sport shooting range on the basis of noise or noise pollution, if the range is in compliance with any noise control laws or ordinances" that may apply. The statute, in subsection (2), also makes any sport shooting range operator "not [] subject to civil liability . . . in any matter relating to noise or noise pollution . . . , if the range is in compliance with any noise control laws or ordinances adopted by a unit of local government applicable to the range" at the time of its construction or opening. § 823.16(2), Fla. Stat. Notably, the County does have a noise-control ordinance, but it expressly exempts target shooting from the allowable noise limitations. Because the Range was "in compliance" with that local ordinance, the immunity provision bars the Gartmans' noise-related nuisance claim.

The right to enjoy one's property without interference is rooted in the common law and has long been recognized by the Florida Supreme Court. *See Prior v. White*, 180 So. 347, 355 (Fla. 1938); *Beckman v. Marshall*, 85 So. 2d 552, 554 (Fla. 1956); *Reaver v. Martin Theatres of Fla., Inc.*, 52 So. 2d 682, 683 (Fla. 1951); *see also Roebuck v. Sills*, 306 So. 3d 374, 377 & 378 (Fla. 1st DCA 2020) ("'An adjoining property owner cannot maintain a . . . nuisance on his property which is injurious to the . . . property rights of an adjacent landowner and not be answerable [for it].'" (quoting *McClosky v. Martin*, 56 So. 2d 916, 918 (Fla. 1951)) (alterations in original)). It is also a tenet of Florida law that excessive noise pollution caused by the activities of one property owner provides an adjacent property owner with the right to seek the common-law action of nuisance and to seek to enjoin the activity giving rise to the noise. *Rae v. Flynn*, 690 So. 2d 1341, 1342 n.1 (Fla. 3d DCA 1997) ("That mere noise may be so great at certain times and under certain circumstances as to amount to an actionable nuisance and entitle the party subjected to it to the preventive remedy of the

---

Attorney General during both the trial court proceedings and the appeal in this Court.

court of equity is thoroughly established.'"). As the common-law right to bring a nuisance claim existed at the Florida Constitution's adoption in 1968, we apply the *Kluger* test to assess the validity of section 823.16.

## A. Reasonable Alternative

Under *Kluger*, we must first consider whether there is a "reasonable alternative" available to the Gartmans as they seek redress of their claimed injuries. 281 So. 2d at 4. Over the last five decades, Florida courts have usually explored this concept in the context of workers' compensation, medical malpractice, and no-fault automobile insurance. *See e.g.*, *Warren*, 899 So. 2d at 1097 (no-fault automobile insurance); *Univ. of Miami v. Echarte*, 618 So. 2d 189, 196 (Fla. 1993) (medical malpractice); *Lasky v. State Farm Ins. Co.*, 296 So. 2d 9, 14 (Fla. 1974) (no-fault automobile insurance); *Doss*, 331 So. 3d at 218 (workers' compensation). In each of these areas, the Florida Legislature has created statutory schemes as alternatives to tort liability. §§ 627.730–.7405, Fla. Stat. (2022) (Motor Vehicle No-Fault Law); §§ 766.201–.212, Fla. Stat. (2022) (Medical Malpractice Act); §§ 440.01–.60, Fla. Stat. (2022) (Workers' Compensation Law). These systems provide parties with "adequate, sufficient, and even preferable safeguards," satisfying *Kluger*'s "reasonable alternative" requirement. *See Kluger*, 281 So. 2d at 4.

We find no similar "reasonable alternative" here. And the Range fails to point to anything that would qualify as such. Under section 823.16, immunity kicks in so long as a shooting range complies with any local noise-control ordinances in effect at the time of the range's construction or initial operation. § 823.16(3), Fla. Stat. The Range argues the Legislature included this requirement as a "safeguard," claiming that local governments may restrict the permitted noise levels and Okaloosa County has simply chosen not to here. But we find this unpersuasive towards satisfying *Kluger*'s reasonable alternative prong. Because the Range was in compliance with the County's regulations, the immunity provision bars the Gartmans' noise-based nuisance claim. They have no alternative pathway to seeking relief for that claim, let alone a "reasonable" one.

8

We also note that the Gartmans' complaints cannot be remedied by any future attempts by the County to regulate noise at the Range. Section 823.16 itself exempts sport shooting ranges that are "not in violation of existing law" from having to comply with any newly enacted local regulations or ordinances "provided the range was not in violation of any law when the range was constructed and provided that the range continues to conform to current National Rifle Association gun safety and shooting range standards." § 823.16(6), Fla. Stat. The Range, thus, has not identified any "adequate, sufficient, [or] preferable safeguards" that would provide the Gartmans with a "reasonable alternative" to their common-law right to seek redress of their asserted injuries. *See Kluger*, 281 So. 2d at 4.

Section 823.16 is therefore distinguishable from the "reasonable alternatives" established by workers' compensation, medical malpractice, and no-fault automobile insurance statutes. As applied, section 823.16 does not just limit, but eliminates the Gartmans' ability to bring a nuisance action against the Range for noise. Without any statutory scheme, arbitration agreement, or other "reasonable alternative" in place, section 823.16 fails the first part of the *Kluger* test. 281 So. 2d at 4.

## B. Overpowering Public Necessity

We now consider whether the other *Kluger* standard has been met. With no "reasonable alternative" in place, the Legislature must show an "overpowering public necessity" for abolishing the right to bring a claim. *Kluger*, 281 So. 2d at 4; *see* § 823.16, Fla. Stat. (2022). The Legislature made this showing in 1945 when it abolished several tort actions: alienation of affections, criminal conversation, seduction, and breach of contract to marry. *See* § 771.01, Fla. Stat. (2022); *see also Kluger*, 281 So. 2d at 4. In abolishing these actions, the Legislature found that the remedies were "subjected to grave abuses" and declared that it was in Florida's best interest to eliminate them. Ch. 23138, Laws of Fla. (1945). In upholding the statute, the Florida Supreme Court concluded that the courts must heed the Legislature's public policy declarations unless they are "clearly shown to have been promulgated without power to do so." *Rotwein v. Gersten*, 36 So. 2d 419, 421 (Fla. 1948).

9

We therefore defer to the Legislature's declarations on public policy, giving "great weight to legislative determinations of facts." *Univ. of Miami v. Echarte*, 618 So. 2d 189, 196 (Fla. 1993) (citing *Am. Liberty Ins. v. W. & Conyers Architects & Eng'rs.*, 491 So. 2d 573 (Fla. 2d DCA 1986)). But on its face, section 823.16 is silent as to any legislative findings or any other justification for abolishing nuisance causes of action against sport shooting ranges. And chapter 99-134, Laws of Florida, which enacted section 823.16, did not otherwise contain any factual or policy determinations to support the existence of an "overpowering public necessity." In this sense, section 823.16 is not unlike the challenged statute in *Kluger*, where the Florida Supreme Court found that the Legislature had not shown an "overpowering public necessity" to abolish the right to sue an automobile tortfeasor for property damage. 281 So. 2d at 5. It is up to the Legislature to present such a case; without these findings, section 823.16 fails under *Kluger*. *Id.* at 4–5; *see also Psychiatric Assocs. v. Siegel*, 610 So. 2d 419, 424 (Fla. 1992) (concluding that a statute with a preamble outlining the existence of a medical malpractice crisis in the state supported the existence of an "overpowering public necessity").

Both parties cite the Legislature's staff analyses, but these documents are "not determinative of final legislative intent." *GTC, Inc. v. Edgar*, 967 So. 2d 781, 789 (Fla. 2007) (citing *White v. State*, 714 So. 2d 440, 443 n.5 (Fla. 1988)); *see also Kasischke v. State*, 991 So. 2d 803, 811 (Fla. 2008) ("The language of the statute should be enough."). Even if we were to consider them, neither provide any illumination on the issue before us.[3]

---

[3] At most, the Senate's staff analysis noted that several other states had recently enacted "anti-nuisance exceptions for sport shooting ranges," in response to growth in shooting range activities, but later concluded that it was "indeterminate how many sport shooting ranges there" were in Florida "or how many ranges would benefit from immunity for civil or criminal liability." Fla. S. Comm. on Judiciary, SB 776 (1999) Staff Analysis 4 (Mar. 15, 1999), https://flsenate.gov/Session/Bill/1999/776/Analys es/19990776SJU_SB0776.ju.pdf. It contains nothing that could be viewed as a conclusive legislative finding or policy statement showing that an overwhelming public necessity existed to support

Invoking the interpretive canon of *in pari materia*, the Range urges us to look to a completely different statute, enacted five years after section 823.16, to find the necessary legislative statements of public policy. Placed within a different chapter of Florida's statutory code, section 790.333 does address protections for sport shooting and training ranges. And it does contain robust legislative findings and policy statements expressing the many benefits of—and the intent to protect from costly lawsuits—the more than "400 sport shooting and training ranges" that exist throughout Florida. But section 790.333 does not address private lawsuits against firearm ranges; it expresses the legislative intent to protect ranges from environmental-protection related government lawsuits or legal action by the State or its agencies, districts, or political subdivisions. § 790.333(2), Fla. Stat. ("LEGISLATIVE INTENT.—The Legislature intends to protect public and private sport shooting or training range owners, . . . from lawsuits and other legal actions by the state, special purpose districts, or political subdivisions and to promote maximum flexibility for implementation of environmental management practices and of the principles of risk-based corrective action . . . ."). The 2004 law even goes so far as to disclaim any legislative intent to "impair or diminish the private property rights" of adjoining neighbors. § 790.333(5)(b), Fla. Stat. ("Nothing in this act is intended to impair or diminish the private property rights of owners of property adjoining a sport shooting or training range.").

Courts read statutes *in pari materia* so that "ambiguities in one statute may be resolved by looking at another statute on the same subject." Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 430 (2012). Our inquiry today does not focus on resolving any statutory ambiguity. Rather, we are looking to discern the 1999 Legislature's intent for the existence of an overpowering public necessity to support the abolishment of the Gartmans' common-law right to sue their

the abolishment of nuisance actions against sport shooting ranges. *See also* Fla. H.R. Comm. on Crime & Pun., HB 67 (1999) Final Staff Analysis 1–8 (May 27, 1999) https://www.flsenate.gov/Session/Bill/1999/67/Analyses/19990067HCP_HB0067Z.CP.pdf.

neighbor for noise-based nuisance. For purposes of our inquiry under *Kluger*, the 2004 Legislature's express findings and policy statements in section 790.333 about government-initiated environmental lawsuits against shooting ranges do not supply what is lacking from the face of section 823.16. The 1999 Legislature could have included similar express language when it enacted section 823.16. It did not. And we will not read into the statute anything beyond what the Legislature chose to include.

All in all, we look only to the language of the statute itself. *Maggio v. Fla. Dep't Lab. & Emp't. Sec.*, 899 So. 2d 1074, 1076–77 (Fla. 2005) ("[L]egislative intent is determined primarily from the language of the statute."). Section 823.16 includes no legislative findings to control our analysis. And we are hesitant to look to other later-enacted statutes in completely different chapters to speculate as to the Legislature's unstated intent in enacting section 823.16. As a result, the Legislature has not shown an "overpowering public necessity" supporting the abolishment of the Gartmans' ability to pursue their nuisance claim, and section 823.16 fails the *Kluger* test.

IV.

For all the above reasons, we conclude that section 823.16, as applied, is invalid under *Kluger* as a violation of the Gartmans' right of access to the courts under article I, section 21. Section 823.16 does not just reduce the Gartmans' ability to bring a noise-based nuisance claim against the Range; it prohibits it altogether without a "reasonable alternative" in place or an "overpowering public necessity" to do so.

We emphasize the as-applied nature of our ruling, which provides narrow relief only to the Gartmans, who purchased their property before the statute's enactment. Our reversal on this issue means that their noise-based nuisance claim may proceed in the trial court. We take no position on whether that claim will succeed.

Accordingly, we reverse in part the trial court's order granting summary judgment on the Gartmans' noise-based nuisance claim and remand for further proceedings. We affirm on all other issues raised.

REVERSED and REMANDED.

OSTERHAUS, C.J., and WINOKUR,[4] J., concur.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

D. Michael Chesser and Tara A. Hagan of Chesser & Barr, P.A., Shalimar, for Appellants.

Edward P. Fleming and Lindsey L. Miller-Hailey of McDonald Fleming, Pensacola, for Appellees.

—————

[4] Judge Winokur substituted in as a panel member after oral argument in this appeal. He has reviewed in full the video recording of the oral argument, along with the record and the parties' briefs.