# Supreme Court of Florida

_____

No. SC13-1930
_____

**BRADLEY WESTPHAL,**
Petitioner,

vs.

**CITY OF ST. PETERSBURG, etc., et al.,**
Respondents.

_____

No. SC13-1976
_____

**CITY OF ST. PETERSBURG, etc.,**
Petitioner,

vs.

**BRADLEY WESTPHAL,**
Respondent.

[June 9, 2016]

PARIENTE, J.

In this case, we consider the constitutionality of section 440.15(2)(a), Florida

Statutes (2009)—part of the state's workers' compensation law—which cuts off

disability benefits after 104 weeks to a worker who is totally disabled and

incapable of working but who has not yet reached maximum medical improvement. We conclude that this portion of the worker's compensation statute is unconstitutional under article I, section 21, of the Florida Constitution, as a denial of the right of access to courts, because it deprives an injured worker of disability benefits under these circumstances for an indefinite amount of time— thereby creating a system of redress that no longer functions as a reasonable alternative to tort litigation.

In Westphal v. City of St. Petersburg/City of St. Petersburg Risk Management, 122 So. 3d 440, 442 (Fla. 1st DCA 2013), an en banc majority of the First District Court of Appeal valiantly attempted to save the statute from unconstitutionality by interpreting section 440.15(2)(a) so that the severely injured worker who can no longer receive temporary total disability benefits, but who is not yet eligible for permanent total disability benefits, would not be cut off from compensation after 104 weeks.[1] The judiciary, however, is without power to

---

1. In its decision, the First District ruled upon the following question, which it certified to be of great public importance:

IS A WORKER WHO IS TOTALLY DISABLED AS A RESULT OF A WORKPLACE ACCIDENT, BUT STILL IMPROVING FROM A MEDICAL STANDPOINT AT THE TIME TEMPORARY TOTAL DISABILITY BENEFITS EXPIRE, DEEMED TO BE AT MAXIMUM MEDICAL IMPROVEMENT BY OPERATION OF LAW AND THEREFORE ELIGIBLE TO ASSERT A CLAIM FOR PERMANENT AND TOTAL DISABILITY BENEFITS?

rewrite a plainly written statute, even if it is to avoid an unconstitutional result.

See Brown v. State, 358 So. 2d 16, 20 (Fla. 1978) ("When the subject statute in no

way suggests a saving construction, we will not abandon judicial restraint and

effectively rewrite the enactment."). We accordingly quash the First District's

decision.

Consistent with the views of both the petitioner, Bradley Westphal, and the

principal respondent, the City of St. Petersburg, we conclude that section

440.15(2)(a) of the workers' compensation law is plainly written and therefore

does not permit this Court to resort to rules of statutory construction. See Knowles

v. Beverly Enters.-Fla., Inc., 898 So. 2d 1, 5 (Fla. 2004). Instead, we must give the

statute its plain and obvious meaning, which provides that "[o]nce the employee

reaches the maximum number of weeks allowed [104 weeks], or the employee

reaches the date of maximum medical improvement, whichever occurs earlier,

temporary disability benefits shall cease and the injured worker's permanent

impairment shall be determined." § 440.15(2)(a), Fla. Stat. The statute does not—

---

Westphal, 122 So. 3d at 448. We have jurisdiction. See art. V, § 3(b)(4), Fla.
Const. Because of our conclusion that the First District's interpretation of the
statute cannot withstand scrutiny, and our holding that the statute is
unconstitutional, we do not specifically answer the certified question. As our
analysis in this opinion explains, to the extent the certified question simply asks
whether the workers' compensation law constitutionally permits the statutory
"gap" at issue, we answer that question in the negative.

as the First District erroneously concluded—provide that the worker is at that time legally entitled to permanent total disability benefits, nor does it provide that the worker is automatically deemed to be at maximum medical improvement based on the cessation of temporary total disability benefits. See Westphal, 122 So. 3d at 444.

Applying the statute's plain meaning, we conclude that the 104-week limitation on temporary total disability benefits results in a statutory gap in benefits, in violation of the constitutional right of access to courts. The stated legislative intent of the workers' compensation law is to "assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer." § 440.015, Fla. Stat. (2009). Section 440.15(2)(a), however, operates in the opposite manner. The statute cuts off a severely injured worker from disability benefits at a critical time, when the worker cannot return to work and is totally disabled but the worker's doctors—chosen by the employer—deem that the worker may still continue to medically improve.

As applied to these circumstances, the workers' compensation law undoubtedly fails to provide "full medical care and wage-loss payments for total or partial disability regardless of fault." Martinez v. Scanlan, 582 So. 2d 1167, 1171-72 (Fla. 1991). Instead, for injured workers like Westphal who are not yet legally

entitled to assert a claim for permanent total disability benefits at the conclusion of 104 weeks of temporary total disability benefits, the workers' compensation law lacks adequate and sufficient safeguards and cannot be said to continue functioning as a "system of compensation without contest" that stands as a reasonable alternative to tort litigation. Mullarkey v. Fla. Feed Mills, Inc., 268 So. 2d 363, 366 (Fla. 1972). Contrary to Justice Canady's dissenting opinion, the seminal case on the meaning of the Florida Constitution's access to courts provision, Kluger v. White, 281 So. 2d 1 (Fla. 1973), specifically discussed the test for determining the constitutionality of the workers' compensation statutory scheme under the access to courts provision, article I, section 21, of the Florida Constitution. The constitutional yardstick, which we applied in Martinez and Mullarkey for determining whether an access-to-courts violation occurred as a result of changes made to the workers' compensation statutory scheme, is whether the scheme continues to provide "adequate, sufficient, and even preferable safeguards for an employee who is injured on the job." Kluger, 281 So. 2d at 4.

Accordingly, we hold that the statute as written by the Legislature is unconstitutional. However, we conclude that this unconstitutional limitation on temporary total disability benefits does not render the entire workers'

- 5 -

compensation system invalid.[2] Rather, we employ the remedy of statutory revival and direct that the limitation in the workers' compensation law preceding the 1994 amendments to section 440.15(2)(a) is revived, which provides for temporary total disability benefits not to exceed 260 weeks—five years of eligibility rather than only two years, a limitation we previously held "passes constitutional muster." Martinez, 582 So. 2d at 1172.

## I. FACTS AND PROCEDURAL HISTORY

In December 2009, Bradley Westphal, then a fifty-three-year-old firefighter in St. Petersburg, Florida, suffered a severe lower back injury caused by lifting

---

2. To the extent Justice Lewis's concurring in result opinion suggests as a remedy that chapter 440 should be "invalidated where defective," the remedy of invalidating other sections in chapter 440 beyond section 440.15(2)(a) is not properly before us. In his briefing on this matter to the Court, Westphal requested reversal of the en banc decision of the First District Court of Appeal to "either reinstate the panel decision"—which revived the pre-1994 statute that provided for the administration of 260 weeks of temporary total disability benefits—or hold "that the 104 weeks limitation on temporary disability" is "unconstitutional as applied to the facts of this case and do so prospectively." Petitioner's Initial Brief at 47. Because we hold that the statute is unconstitutional as applied to Westphal and others similarly situated, we have granted Westphal's requested relief of reversing the en banc decision of the First District Court of Appeal and will not consider an argument of the unconstitutionality of the entire workers' compensation law when the parties have not raised such an expansive remedy. Although the remedy of invalidating the entire workers' compensation law was suggested at some length by the Florida Workers' Advocates in an amicus curiae brief filed in support of Westphal, we do not consider arguments raised by amici curiae that were not raised by the parties. See Riechmann v. State, 966 So. 2d 298, 304 n.8 (Fla. 2007); Dade Cty. v. E. Air Lines, Inc., 212 So. 2d 7, 8 (Fla. 1968); Michels v. Orange Cty. Fire Rescue, 819 So. 2d 158, 159-60 (Fla. 1st DCA 2002).

heavy furniture in the course of fighting a fire. As a result of the lower back injury, Westphal experienced extreme pain and loss of feeling in his left leg below the knee and required multiple surgical procedures, including an eventual spinal fusion.

Shortly after his workplace injury, Westphal began receiving benefits pursuant to the workers' compensation law set forth in chapter 440, Florida Statutes (2009). Specifically, the City of St. Petersburg began to provide both indemnity benefits, in the form of temporary total disability benefits pursuant to section 440.15(2), Florida Statutes, and medical benefits.

Under section 440.15(2)(a), entitlement to temporary total disability benefits ends when a totally disabled injured worker reaches the date of maximum medical improvement or after 104 weeks, whichever occurs earlier. § 440.15(2)(a), Fla. Stat. The "date of maximum medical improvement" is defined in section 440.02(10), Florida Statutes (2009), as "the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated, based upon reasonable medical probability." Westphal did not reach maximum medical improvement prior to the expiration of the 104-week limitation on temporary total disability benefits.

At the expiration of temporary total disability benefits, Westphal was still incapable of working or obtaining employment, based on the advice of his doctors

and the vocational experts that examined him.  In an attempt to replace his pre-injury wages of approximately $1,500 per week that he was losing because of his injuries, Westphal filed a petition for benefits, claiming either further temporary disability or permanent total disability pursuant to section 440.15(1), Florida Statutes (2009).

## A.  Judge of Compensation Claims Decision

The Judge of Compensation Claims (JCC) held a hearing on Westphal's petition and subsequently denied the claim for permanent total disability benefits based on its interpretation of City of Pensacola Firefighters v. Oswald, 710 So. 2d 95 (Fla. 1st DCA 1998), and Matrix Employee Leasing, Inc. v. Hadley, 78 So. 3d 621 (Fla. 1st DCA 2011).  In Oswald, the First District held that to receive permanent total disability benefits, "an employee whose temporary benefits have run out—or are expected to do so imminently—must be able to show not only total disability upon the cessation of temporary benefits but also that total disability will be 'existing after the date of maximum medical improvement.' "  710 So. 2d at 98, abrogated by Westphal, 122 So. 3d at 448 (quoting § 440.02(19), Fla. Stat. (Supp. 1994)).  The First District also observed that the statutory scheme could create a statutory gap—a period of time when totally disabled individuals would no longer be eligible for temporary total disability benefits and could not receive any disability benefits until, possibly, finally being declared eligible for permanent

total disability benefits.  Id. at 97-98.  In Hadley, the First District again acknowledged the concern of a statutory gap in benefits, but reaffirmed Oswald nonetheless.  See Hadley, 78 So. 3d at 624-25, receded from by Westphal, 122 So. 3d at 442.

Based on this line of case law, the JCC denied Westphal's claim.  In its final order, the JCC found that Westphal had not reached maximum medical improvement and that it was "too speculative to determine whether he will remain totally disabled after the date of [maximum medical improvement] has been reached from a physical standpoint."  Thus, Westphal fell into the statutory gap— still totally disabled at the cessation of temporary total disability benefits, but not yet entitled to permanent total disability benefits because he could not prove that he would still be totally disabled when he reached maximum medical improvement.  He was, in essence, completely cut off from disability benefits for an indefinite amount of time, unless and until he could claim entitlement to permanent total disability benefits at some future date and, even then, without any ability to recover disability benefits for his time in the statutory gap.

## B.  First District Panel Decision

Westphal appealed to the First District, contending that the JCC erred in determining that he was not entitled to permanent total disability benefits.  He further argued that the 104-week statutory limitation on temporary total disability

benefits, as applied to him, was an unconstitutional denial of access to courts. A panel of the First District agreed with the constitutional claim, holding that the 104-week limitation on temporary total disability benefits was unconstitutional as applied to the facts of this case.

Specifically, relying on Kluger, 281 So. 2d 1, the First District panel concluded that the 104-week limitation on temporary total disability benefits was an inadequate remedy as compared to the 350 weeks available when voters adopted the access to courts provision in the 1968 Florida Constitution. The First District panel also observed that the 104-week limitation on temporary total disability benefits was the lowest in the United States. The First District panel applied its decision prospectively and instructed the JCC to grant Westphal additional temporary total disability benefits, not to exceed 260 weeks, as would have been provided under the relevant statutory provisions in effect before the 1994 amendment of section 440.15(2)(a), limiting eligibility for temporary total disability benefits to a maximum of 104 weeks.

### C. First District En Banc Decision

Subsequent to the panel decision, the First District granted motions for rehearing en banc filed by the City and the State. The First District then issued an en banc decision withdrawing the panel opinion that had declared the statute unconstitutional. Setting forth a new interpretation of the statute to avoid a holding

of unconstitutionality, the First District's en banc decision receded from <u>Hadley</u>, 78 So. 3d 621, and abrogated <u>Oswald</u>, 710 So. 2d 95.

In addressing the issue of Westphal's entitlement to disability benefits, the en banc majority determined that the First District's construction of the statute fifteen years earlier in <u>Oswald</u>, and then again two years earlier in <u>Hadley</u>, was incorrect. Specifically, the First District noted that the statute requires a medical evaluation either when an injured worker reaches maximum medical improvement or six weeks before the expiration of the 104-week period of eligibility for temporary total disability benefits, whichever occurs earlier, and that the doctor must assign an impairment rating as part of this evaluation. <u>Westphal</u>, 122 So. 3d at 444. The First District construed the use of the phrase "permanent impairment" in section 440.15(2)(a) to signify that the worker has attained maximum medical improvement. <u>Id.</u> at 445-46. Accordingly, the First District held that "a worker who is totally disabled as a result of a workplace accident and remains totally disabled by the end of his or her eligibility for temporary total disability benefits is deemed to be at maximum medical improvement by operation of law and is therefore eligible to assert a claim for permanent and total disability benefits." <u>Id.</u> at 442.

As a result of this new interpretation of the statute, which eliminated the statutory gap, the First District found it unnecessary to consider whether its prior,

now discredited interpretation of the statute in <u>Hadley</u>—recognizing the gap—rendered the statute unconstitutional as a denial of the right of access to courts. <u>Id.</u> at 447. The First District then certified the question it passed upon as one of great public importance. <u>Id.</u> at 448. We granted review[3] and now quash the First District's en banc decision and hold the statute unconstitutional as applied, in accordance with the prior panel opinion.

## II. ANALYSIS

Both Westphal as the petitioner and the City as the principal respondent argue before this Court that the First District's previous construction of the statute in <u>Hadley</u> and <u>Oswald</u> was correct, and that the new interpretation advanced by the en banc majority in <u>Westphal</u> amounts to a violation of separation of powers, due process, and the principle of stare decisis. The State, which is also a respondent, agrees that the previous interpretation of the First District in <u>Hadley</u> and <u>Oswald</u> is correct, but argues that the First District's new construction of section 440.15(2)(a) is a reasonable alternative interpretation if this Court is inclined to declare the 104-week limitation on temporary total disability benefits to be invalid as a denial of access to courts. Westphal, however, argues that there is no judicial fix and that

---

3. Both Westphal and the City invoked this Court's discretionary jurisdiction. We consolidated the petitions but retained the two different case numbers. During briefing, we treated Westphal as the petitioner and the City as the respondent, and we accordingly employ those same designations here.

- 12 -

the 104-week limitation in section 440.15(2)(a), as applied to him and others similarly situated, is an unconstitutional denial of access to courts.

We thus begin our analysis by interpreting section 440.15 to determine if the First District's en banc opinion—eliminating the statutory gap—provides a permissible statutory construction, or if the First District's prior opinions in Hadley and Oswald—recognizing the statutory gap created by the Legislature—provided the correct interpretation. After concluding that the First District's en banc opinion is an impermissible judicial rewrite of the Legislature's plainly written statute, we are forced to confront the constitutional issue of whether the statute, as applied to Westphal and other similarly situated severely injured workers, is unconstitutional. Concluding that the statute, as applied, violates the access to courts provision of the Florida Constitution, we conclude by considering the appropriate remedy.

### A. Section 440.15, Florida Statutes

Section 440.15, Florida Statutes (2009), governs the payment of disability benefits to injured workers. As of the 1968 adoption of the Florida Constitution, permanent total disability benefits were determined "in accordance with the facts," and the term "maximum medical improvement" was not included in the workers' compensation law. § 440.15(1), Fla. Stat. (1968). Nevertheless, the phrase "maximum medical improvement" was part of this Court's lexicon because it assisted in determining the permanence of the injury. Indeed, in 1969, this Court

noted that "[t]he date of maximum medical improvement marks the end of temporary disability and the beginning of permanent disability." Corral v. McCrory Corp., 228 So. 2d 900, 903 (Fla. 1969). At that time, section 440.15(2) provided for the payment of temporary total disability benefits for a duration not to exceed 350 weeks. § 440.15(2), Fla. Stat. (1968).

In 1979, the Legislature added the term "date of maximum medical improvement" to the statute, defining it consistently with this Court's prior 1969 construction in Corral and requiring that the date be "based upon reasonable medical probability." § 440.02(22), Fla. Stat. (1979). That statutory definition has remained unchanged to this day.

In 1990, the Legislature reduced the duration of temporary total disability benefits from 350 weeks to 260 weeks. § 440.15(2), Fla. Stat. (1990). Then, just four years later, and as part of an extensive statutory overhaul, the Legislature further reduced the duration of temporary total disability benefits from 260 weeks to 104 weeks. § 440.15(2)(a), Fla. Stat. (1994).

Accordingly, in 2009, at the time of the events giving rise to this case, section 440.15(1) provided in part:

> (a) In case of total disability adjudged to be permanent, $66^2/_3$ percent of the average weekly wages shall be paid to the employee during the continuance of such total disability. No compensation shall be payable under this section if the employee is engaged in, or is physically capable of engaging in, at least sedentary employment.

(b) In the following cases, an injured employee is presumed to be permanently and totally disabled unless the employer or carrier establishes that the employee is physically capable of engaging in at least sedentary employment within a 50-mile radius of the employee's residence:

. . . .

In all other cases, in order to obtain permanent total disability benefits, the employee must establish that he or she is not able to engage in at least sedentary employment, within a 50-mile radius of the employee's residence, due to his or her physical limitation. . . . Only claimants with catastrophic injuries or claimants who are incapable of engaging in employment, as described in this paragraph, are eligible for permanent total benefits. In no other case may permanent total disability be awarded.

Under the plain language of this provision, permanent total disability benefits are expressly limited to "claimants with catastrophic injuries or claimants who are incapable of engaging in employment." § 440.15(1)(b), Fla. Stat. (2009). "In no other case may permanent total disability be awarded." Id.

Section 440.15(2)(a), which governs temporary total disability benefits, provided in part as follows:

Subject to subsection (7), in case of disability total in character but temporary in quality, $66^2/_3$ percent of the average weekly wages shall be paid to the employee during the continuance thereof, not to exceed 104 weeks except as provided in this subsection, s. 440.12(1), and s. 440.14(3).[4] Once the employee reaches the maximum number

—————————

4. Section 440.12(1), Florida Statutes (2009), provides: "No compensation shall be allowed for the first 7 days of the disability, except benefits provided for in s. 440.13. However, if the injury results in disability of more than 21 days, compensation shall be allowed from the commencement of the disability." Section 440.14(3), Florida Statutes (2009), provides in part: "The department shall

- 15 -

of weeks allowed, or the employee reaches the date of maximum medical improvement, whichever occurs earlier, temporary disability benefits shall cease and the injured worker's permanent impairment shall be determined.

Under the plain language of this provision, temporary total disability benefits are payable for no more than 104 weeks, after which the worker's permanent impairment rating must be determined. "The permanent impairment rating is used to pay 'impairment income benefits,' " as distinguished from permanent total disability benefits, "commencing on 'the day after the employee reaches [maximum medical improvement] or after the expiration of temporary benefits, whichever occurs earlier,' and continuing for a period determined by the employee's percentage of impairment." Hadley, 78 So. 3d at 624 (quoting § 440.15(3)(g), Fla. Stat.).

As the First District recognized in Hadley, "[t]he statutory scheme in section 440.15 works seamlessly when the injured employee reaches [maximum medical improvement] prior to the expiration of the 104 weeks of temporary disability benefits." Id. But where "the employee is not at [maximum medical improvement] at the expiration of the 104 weeks, there is the potential for a 'gap' in disability benefits because [temporary total disability] benefits cease by

establish by rule a form which shall contain a simplified checklist of those items which may be included as 'wage' for determining the average weekly wage."

- 16 -

operation of law after 104 weeks and entitlement to [permanent total disability] benefits is generally not ripe until the employee reaches [maximum medical improvement]." Id.

Analyzing these statutory provisions, and in an apparent effort to avoid the statutory gap, the First District in Westphal ultimately concluded that the Legislature's use of the term "permanent impairment" in section 440.15(2)(a) signifies that the disabled worker has attained maximum medical improvement by operation of law. See Westphal, 122 So. 3d at 445. The First District therefore held that "a worker who is totally disabled as a result of a workplace accident and remains totally disabled by the end of his or her eligibility for temporary total disability benefits is deemed to be at maximum medical improvement by operation of law and is therefore eligible to assert a claim for permanent and total disability benefits." Id. at 442.

Although this Court's review of the First District's statutory interpretation is de novo, "statutes come clothed with a presumption of constitutionality and must be construed whenever possible to effect a constitutional outcome." Crist v. Fla. Ass'n of Crim. Def. Lawyers, Inc., 978 So. 2d 134, 139 (Fla. 2008). While we are confident that the First District en banc majority was attempting to save the statute's constitutionality by interpreting it so as to avoid a draconian result for

severely injured workers, the clear language of the statute simply does not allow us to agree with the First District's interpretation.

Rather, the previous interpretation provided by the First District in Oswald, and adhered to in Hadley, is consistent with the Legislature's plainly stated intent, which nowhere indicates that the Legislature sought to equate the expiration of temporary total disability benefits with maximum medical improvement.  As stated in Oswald, under the plain language of the statute, "an employee whose temporary benefits have run out—or are expected to do so imminently—must be able to show not only total disability upon the cessation of temporary benefits but also that total disability will be existing after the date of maximum medical improvement" in order to be eligible to receive permanent total disability benefits.  710 So. 2d at 98 (internal citation omitted).

Specifically, section 440.15(2)(a) requires an injured worker's "permanent impairment,"[5] as opposed to permanent total disability, to be determined.  In addition, section 440.15(3), which pertains to "permanent impairment benefits," is the only section that discusses an "evaluation" for permanent impairment of the employee, with entitlement to such benefits to commence the day after the

_____

    5. As defined in section 440.02(22), Florida Statutes (2009), "permanent impairment" means "any anatomic or functional abnormality or loss determined as a percentage of the body as a whole, existing after the date of maximum medical improvement, which results from the injury."

- 18 -

employee reaches maximum medical improvement or his or her temporary total disability benefits expire. Permanent impairment benefits are distinct from, and not a substitute for, total disability benefits. Thus, the plain language of the statute provides for permanent impairment to be determined for purposes of impairment benefits as opposed to permanent total disability benefits.

It is clear from the statute that the Legislature intended to limit the duration of temporary total disability benefits to a maximum of 104 weeks. It is further clear that the Legislature intended to limit the class of individuals who are entitled to permanent total disability benefits to those with catastrophic injuries and those who are able to demonstrate a permanent inability to engage in even sedentary employment within a fifty-mile radius of their home. In other words, these provisions "create a gap in disability benefits for those injured workers who are totally disabled upon the expiration of temporary disability benefits but fail to prove prospectively that total disability will exist after the date of [maximum medical improvement]." Hadley, 78 So. 3d at 626 (quoting Crum v. Richmond, 46 So. 3d 633, 637 n.3 (Fla. 1st DCA 2010)).

Although this Court must, whenever possible, construe statutes to effect a constitutional outcome, we may not salvage a plainly written statute by rewriting it. See Sult v. State, 906 So. 2d 1013, 1019 (Fla. 2005) ("Courts may not go so far in their narrowing constructions so as to effectively rewrite legislative

enactments."). The gap in benefits caused by the Legislature's decision to reduce the duration of entitlement to temporary total disability benefits may be an unintentional, unanticipated, and unfortunate result. But even if potentially unwise and unfair, it is not the prerogative of the courts to rewrite a statute to overcome its shortcomings. See Clines v. State, 912 So. 2d 550, 558 (Fla. 2005) ("A court's function is to interpret statutes as they are written and give effect to each word in the statute." (quoting Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So. 2d 320, 324 (Fla. 2001))); Metro. Dade Cty. v. Bridges, 402 So. 2d 411, 414 (Fla. 1981), receded from on other grounds by Makemson v. Martin Cty., 491 So. 2d 1109 (Fla. 1986) (explaining that "courts may not vary the intent of the legislature with respect to the meaning of the statute in order to render the statute constitutional").

Because we hold that the statute is clear in creating a statutory gap in benefits, and thus not susceptible to the rules of statutory construction, we turn to Westphal's constitutional challenge—that the statute as plainly written results in a denial of access to courts.

## B. Denial of Access to Courts

Article I, section 21, of the Florida Constitution, part of our state constitutional "Declaration of Rights" since 1968, guarantees every person access to the courts and ensures the administration of justice without denial or delay: "The

courts shall be open to every person for redress of any injury, and <u>justice shall be administered without sale, denial or delay</u>."  Art. I, § 21, Fla. Const. (emphasis added).  This important state constitutional right has been construed liberally in order to "guarantee broad accessibility to the courts for resolving disputes."  <u>Psychiatric Assocs. v. Siegel</u>, 610 So. 2d 419, 424 (Fla. 1992), <u>receded from on other grounds by</u> <u>Agency for Health Care Admin. v. Associated Indus. of Fla., Inc.</u>, 678 So. 2d 1239 (Fla. 1996).

In <u>Kluger</u>, this Court explained the meaning of the access to courts provision and the necessary showing for demonstrating a constitutional violation based on access to courts:

> [W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.

281 So. 2d at 4.

Prior to 1968, when the access to courts provision was adopted, the Legislature had already abolished the common-law tort remedy for injured workers and enacted a workers' compensation law "as administrative legislation to be simple, expeditious, and inexpensive so that the injured employee, his family, or

- 21 -

society generally, would be relieved of the economic stress resulting from work-connected injuries, and place the burden on the industry which caused the injury." Lee Eng'g & Constr. Co. v. Fellows, 209 So. 2d 454, 456 (Fla. 1968). The workers' compensation law "abolishes the right to sue one's employer and substitutes the right to receive benefits under the compensation scheme." Sasso v. Ram Prop. Mgmt., 452 So. 2d 932, 933 (Fla. 1984).

Nevertheless, the fact that workers' compensation was created prior to 1968 as a non-judicial statutory scheme of no fault benefits intended to provide full medical care and wage-loss payments does not mean that changes to the workers' compensation law to reduce or eliminate benefits are immune from a constitutional attack based on access to courts. In fact, this Court in Kluger specifically discussed the alternative remedy of workers' compensation, explaining that "[w]orkmen's compensation abolished the right to sue one's employer in tort for a job-related injury, but provided adequate, sufficient, and even preferable safeguards for an employee who is injured on the job, thus satisfying one of the exceptions to the rule against abolition of the right to redress for an injury." Kluger, 281 So. 2d at 4 (emphasis added). In other words, as Kluger held, workers' compensation constitutes a "reasonable alternative" to tort litigation—and therefore does not violate the access to courts provision—so long as it provides adequate and sufficient safeguards for the injured employee. Id.

- 22 -

This Court has applied the Kluger analysis in subsequent cases that have raised constitutional challenges to the workers' compensation law based on access to courts. Citing to Kluger, this Court in Martinez explained that in order to be upheld as constitutional, the workers' compensation law must continue to provide a "reasonable alternative to tort litigation." Martinez, 582 So. 2d at 1171-72; see also Mahoney v. Sears, Roebuck & Co., 440 So. 2d 1285, 1286 (Fla. 1983) ("Workers' compensation, therefore, still stands as a reasonable litigation alternative.").

In Martinez, this Court noted that it "previously has rejected claims that workers' compensation laws violate access to courts by failing to provide a reasonable alternative to common-law tort remedies." Martinez, 582 So. 2d at 1171 (citing Kluger, 281 So. 2d at 4). Although the 1990 amendment addressed by the Court in Martinez "undoubtedly reduce[d] benefits to eligible workers," by reducing the administration of temporary total disability benefits from 350 weeks to 260 weeks, this Court concluded at that time that "the workers' compensation law remains a reasonable alternative to tort litigation." Id. at 1171-72 (emphasis added). But this conclusion was premised on the holding that the workers' compensation scheme as a whole continued to provide "injured workers with full medical care and wage-loss payments for total or partial disability regardless of fault and without the delay and uncertainty of tort litigation." Id. at 1172. That is,

- 23 -

under the Kluger analysis, the law at the time of Martinez, which provided for 260 weeks for temporary total disability, continued to provide adequate and sufficient safeguards for injured employees.

Therefore, although this Court has rejected constitutional challenges to the workers' compensation law in the past, our precedent clearly establishes that, when confronted with a constitutional challenge based on access to courts, we must determine whether the law "remains a reasonable alternative to tort litigation." Acton v. Fort Lauderdale Hosp., 440 So. 2d 1282, 1284 (Fla. 1983). However, because the workers' compensation law had already been adopted in 1968, the question in this case is whether the workers' compensation law with regard to the 104-week limitation remains a "system of compensation without contest," Mullarkey, 268 So. 2d at 366, that provides "full medical care and wage-loss payments for total or partial disability regardless of fault," Martinez, 582 So. 2d at 1172 (emphasis added).

The 104-week limitation on temporary total disability benefits and the statutory gap must therefore be viewed through the analytical paradigm of Kluger, asking whether the workers' compensation law continues to provide adequate and sufficient safeguards for the injured worker and thus constitutes a constitutional, reasonable alternative to tort litigation. Kluger, 281 So. 2d at 4. The "reasonable alternative" test is then the linchpin and measuring stick, and this Court has

undoubtedly upheld as constitutional many limitations on workers' compensation benefits as benefits have progressively been reduced over the years and the statutory scheme changed to the detriment of the injured worker.

But, there must eventually come a "tipping point," where the diminution of benefits becomes so significant as to constitute a <u>denial</u> of benefits—thus creating a constitutional violation. We accordingly must review what has occurred to the workers' compensation system since the 1968 adoption of the access to courts provision, as it relates to providing "full medical care and wage-loss payments for total or partial disability regardless of fault," <u>Martinez</u>, 582 So. 2d at 1172, in order to determine whether we have now reached that constitutional "tipping point."

As applied to Westphal, the current workers' compensation statutory scheme does not just reduce the amount of benefits he would receive, which was the issue we addressed in <u>Martinez</u>, but in fact completely cuts off his ability to receive any disability benefits at all. It does so even though there is no dispute that Westphal remained a severely injured and disabled firefighter under active treatment by doctors the City selected for him. As stated in the First District's original panel opinion:

> Under this law, the City—not Westphal—had the right to select and, if appropriate, de-select, the doctors who would treat his work-related injuries. Through this statutory system of recovery, the City had the right to meet and confer with their selected doctors without Westphal's involvement, and obtain otherwise-confidential medical information—whether or not Westphal consented to such

- 25 -

communications.  And the City had the right to make decisions as to whether it would authorize the medical treatment recommended by the doctors of its choosing.  For his part, Westphal, removed from his otherwise inherent right to select his medical providers and make unfettered decisions about his medical care, was required to follow the recommendations of the doctors authorized by his employer.  Should he fail to do so, he risked losing entitlement to his workers' compensation benefits, his only legal remedy.

As part of his medical care, Westphal required multiple surgical procedures, culminating in a five-level fusion of the lumbar spine.  Under chapter 440, Westphal was then required to refrain from working and go without disability pay or wages—and wait.  Westphal had to wait until the [City's] authorized doctors opined that he had reached maximum medical improvement, with no guarantee that such a day would ever come.  But, even once he fully recovered, Westphal could not, under normal circumstances, recover disability benefits for the indeterminate waiting period.

Westphal v. City of St. Petersburg/City of St. Petersburg Risk Mgmt., No. 1D12-3563, slip op. at 7-8 (Fla. 1st DCA Feb. 28, 2013) (footnote omitted) (emphasis added), opinion withdrawn and superseded on rehearing en banc by Westphal, 122 So. 3d 440.  In other words, even though doctors chosen by the City had performed multiple surgical procedures culminating in a five-level spinal fusion, because those same doctors did not render an opinion that Westphal had reached maximum medical improvement—that is, that he had reached the end of his medical recovery and would improve no further—Westphal was not yet eligible for permanent total disability benefits.  And there was no way to know when those doctors would determine that he had reached maximum medical improvement, leaving Westphal

without disability benefits for an indefinite amount of time while he was still totally disabled and incapable of working.

In comparing the rights of a worker such as Westphal injured on the job today with those of a worker injured in 1968, the extent of the changes in the workers' compensation system is dramatic. A worker injured in 1968 was entitled to receive temporary total disability benefits for up to 350 weeks. See § 440.15(2), Fla. Stat. (1968). In 1990, the Legislature reduced the availability of temporary total disability benefits from 350 to 260 weeks—a 25.7% reduction of two years. See ch. 90-201, § 20, Laws of Fla. Then, in 1993, the Legislature again reduced the availability of temporary total disability benefits, this time from 260 weeks to 104 weeks—a 60% reduction. See ch. 93-415, § 20, Laws of Fla. This means that an injured worker such as Westphal is now eligible to receive only 104 weeks of temporary total disability benefits—a massive 70% reduction when compared to the temporary total disability benefits available in 1968.

It is uncontroverted that decreasing substantially the period of payments from 350 weeks to 104 weeks, standing alone, results in a dramatic reduction from almost seven years of disability benefits down to two years. Whereas almost seven years or even five years post-accident should be a reasonable period for an injured worker to achieve maximum medical improvement, clearly two years is not for the

most severely injured of workers, like Westphal, who might be in need of multiple surgical interventions.

Currently, at the conclusion of the 104-week limit, temporary total disability benefits cease, regardless of the condition of the injured worker. Therefore, rather than receive "full medical care and wage-loss payments" for a continuing disability, as the workers' compensation law was intended, an injured worker's full medical care and wage-loss payments are eliminated after 104 weeks if the worker falls into the statutory gap. This is true even if the worker remains incapable of working for an indefinite period of time, based on the advice of the employer-selected doctors.

Recognizing the constitutional implications of such a statutory scheme, Judge Van Nortwick, in his dissent in Hadley, cogently noted:

> [I]n the case of a totally disabled claimant whose rights to temporary disability benefits has expired, but who is prohibited from receiving permanent disability benefits, the elimination of disability benefits may reach a point where the claimant's cause of action has been effectively eliminated. In such a case, the courts might well find that the benefits under the Workers' Compensation Law are no longer a reasonable alternative to a tort remedy and that, as a result, workers have been denied access to courts.

78 So. 3d at 634 (Van Nortwick, J., dissenting). We have now reached that point at which "the claimant's cause of action has been effectively eliminated"—the constitutional "tipping point" of which Judge Van Nortwick forewarned.

We conclude that the 104-week limitation on temporary total disability benefits, as applied to a worker like Westphal, who falls into the statutory gap at the conclusion of those benefits, does not provide a "reasonable alternative" to tort litigation. Under the current statute, workers such as Westphal are denied their constitutional right of access to the courts. We agree with the point our colleague, Justice Lewis, makes in his concurring in result opinion that:

> Under the plain language of the statute, many hardworking Floridians who become injured in the course of employment are denied the benefits necessary to pay their bills and survive on a day-to-day basis. The inequitable impact of this statute is patent because it provides permanent total disability benefits to the disabled worker who reaches maximum medical improvement quickly, but arbitrarily and indefinitely terminates benefits to other disabled workers—i.e., until the employee proves that he or she is permanently and totally disabled once maximum medical improvement is attained, <u>even where there is no dispute that the employee is totally disabled at the time the temporary benefits expire, and even if maximum medical improvement will occur in the future</u>.

Concurring in result op. of Lewis, J., at 39-40 (footnote omitted) (emphasis in original).

Sadly, Westphal's case is not an isolated one. As observed by Judge Thomas in the First District's panel opinion:

> When an employee sustains serious injuries that require prolonged or complicated medical treatment, <u>it is not unusual for that claimant to exhaust entitlement to 104 weeks of temporary disability benefits before reaching maximum medical improvement (the status of full medical recovery)—paradoxically leaving only seriously injured individuals without compensation for disability while under medical instructions to refrain from work that cannot be ignored lest a defense</u>

- 29 -

> of medical non-compliance be raised. Although this result is
> anathema to the stated purposes of chapter 440, providing injured
> workers with prompt medical and indemnity benefits, this court has
> held on numerous occasions that an award of permanent total
> disability benefits is premature until an injured worker reaches the
> stage of full medical recovery.

Westphal, No. 1D12-3563, slip op. at 17-18 (footnote omitted) (emphasis added).

Although Westphal has not argued at length that this Court should declare the entire workers' compensation law unconstitutional, the statutory gap cannot be viewed in isolation from the remainder of the statutory scheme. Over the years, there has been continuous diminution of benefits and other changes in the law. For example, during the same period of time in which the Legislature reduced the provision of disability benefits, the Legislature also gave employers and insurance carriers the virtually unfettered right to select treating physicians in workers' compensation cases. See § 440.13(2)(f), Fla. Stat. (2009); see also Butler v. Bay Ctr./Chubb Ins. Co., 947 So. 2d 570, 572-73 (Fla. 1st DCA 2006). Further, the right of the employee and the employer to "opt out" of the workers' compensation law, and preserve their tort remedies, was repealed. See §§ 440.015, 440.03, Fla. Stat. (2009). Other changes have included a heightened standard that the compensable injury be the "major contributing cause" of a worker's disability and need for treatment, and a requirement that the injured worker pay a medical copayment after reaching maximum medical improvement. See §§ 440.09(1), 440.13(14)(c), Fla. Stat. (2009).

The current law also allows for apportionment of all medical costs based on a preexisting condition. See § 440.15(5), Fla. Stat. (2009). As Judge Webster has observed, allowing for the apportionment of medical costs means that "injured workers will be less likely to seek medical treatment, making it more likely that they will be unable to return to the workplace." Staffmark v. Merrell, 43 So. 3d 792, 798 (Fla. 1st DCA 2010) (Webster, J., concurring). This change, Judge Webster commented, significantly reduces the benefits to which many injured workers are entitled, thereby leading to a reasonable conclusion that "the right to benefits has become largely illusory." Id.

Although this Court in Martinez, 582 So. 2d at 1171-72, upheld the 1990 version of the workers' compensation law on constitutional grounds, we wholeheartedly agree with Judge Thomas's conclusion that the current version of the law presents a materially different situation:

> We are now presented with a different iteration of the Workers' Compensation Law from that addressed in Martinez—one which today provides an injured worker with limited medical care, no disability benefits beyond the 104-week period, and no wage-loss payments, full or otherwise. And, the lack of disability compensation occurs only because the severely injured worker has not reached maximum medical improvement as to the very injury for which redress is guaranteed under the Florida constitution.
>     The natural consequence of such a system of legal redress is potential economic ruination of the injured worker, with all the terrible consequences that this portends for the worker and his or her family. A system of redress for injury that requires the injured worker to legally forego any and all common law right of recovery for full damages for an injury, and surrender himself or herself to a system

- 31 -

which, whether by design or permissive incremental alteration, subjects the worker to the known conditions of personal ruination to collect his or her remedy, is not merely unfair, but is fundamentally and manifestly unjust. We therefore conclude that the 104-week limitation on temporary total disability benefits violates Florida's constitutional guarantee that justice will be administered without denial or delay.

Westphal, No. 1D12-3563, slip op. at 18-19 (footnote omitted).

Thus, under the access to courts analysis articulated in Kluger, the only way to avoid a holding of unconstitutionality under these circumstances would be to demonstrate an overwhelming public necessity to justify the Legislature's elimination of temporary total disability benefits after 104 weeks for our most injured workers. See Kluger, 281 So. 2d at 4. We conclude that this showing has not been made. The statute is unconstitutional as applied.

Accordingly, the question becomes one of remedy. "Florida law has long held that, when the legislature approves unconstitutional statutory language and simultaneously repeals its predecessor, then the judicial act of striking the new statutory language automatically revives the predecessor unless it, too, would be unconstitutional." B.H. v. State, 645 So. 2d 987, 995 (Fla. 1994). We therefore conclude that the proper remedy is the revival of the pre-1994 statute that provided for a limitation of 260 weeks of temporary total disability benefits. See § 440.15(2)(a), Fla. Stat. (1991). The provision of 260 weeks of temporary total disability benefits amounts to two and a half times more benefits—five years of

- 32 -

eligibility for benefits rather than only two—and thus avoids the constitutional infirmity created by the current statutory gap as applied to Westphal.

In this regard, we respectfully disagree with the assertion in Justice Lewis's concurring in result opinion that this remedy is insufficient because it still allows for the possibility of a statutory gap, and would therefore unconstitutionally deprive claimants of access to courts. Concurring in result op. of Lewis, J., at 35. In fact, as we have indicated throughout this opinion, we previously held that the pre-1994 statute's limitation of 260 weeks "passes constitutional muster" because it "remains a reasonable alternative to tort litigation," where a worker "is not without a remedy." Martinez, 582 So. 2d at 1171-72. Although the length of time available for the administration of temporary total disability benefits to a worker before the worker reaches maximum medical improvement does involve line drawing, the difference between a period of only two years (104 weeks) and five years (260 weeks) is significant as it relates to the time it takes a worker to attain maximum medical improvement.

### III. CONCLUSION

For all the reasons explained in this opinion, we hold section 440.15(2)(a), Florida Statutes (2009), unconstitutional as applied to Westphal and all others similarly situated, as a denial of access to courts under article I, section 21, of the Florida Constitution. The statute deprives a severely injured worker of disability

- 33 -

benefits at a critical time, when the worker cannot return to work and is totally disabled, but the worker's doctors—chosen by the employer—determine that the worker has not reached maximum medical improvement.

Such a significant diminution in the availability of benefits for severely injured workers, particularly when considered in conjunction with the totality of changes to the workers' compensation law from 1968, when the access to courts provision was added to our Constitution, to the present, is unconstitutional under our precedent. Accordingly, we quash the First District's en banc decision in Westphal and remand this case to the First District for further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and QUINCE, and PERRY, JJ., concur.
LEWIS, J., concurs in result with an opinion.
CANADY, J., dissents with an opinion, in which POLSTON, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

LEWIS, J., concurring in result.

I agree with the conclusion reached by the majority that section 440.15(2)(a) is unconstitutional as applied to Bradley Westphal. Valiant judicial attempts to salvage the statute notwithstanding, the statutory gap that resulted from the limitations in section 440.15(2)(a) is a plain denial of the right of access to courts guaranteed by the Constitution of this State to Floridians who, after 104 weeks,

- 34 -

may still be totally disabled due to injuries received in the course of their employment.

However, at this point in time, I conclude that the remedy relied upon by the majority is insufficient. Statutory revival of the 1994 limitation, which provides for the administration of temporary total disability for 360 weeks, may provide relief for those individuals who remain totally disabled but have not been deemed permanently disabled at the end of 104 weeks. However, this remedy simply moves the goalposts without eliminating the unconstitutional statutory gap that will still persist for those who remain totally—but not permanently—disabled after 360 weeks. Therefore, I do not believe that this is a situation in which statutory revival is appropriate. Cf. B.H. v. State, 645 So. 2d 987, 995 (Fla. 1994) ("[T]he judicial act of striking the new statutory language automatically revives the predecessor unless it, too, would be unconstitutional." (emphasis added)). In my opinion, the only appropriate remedy would be to require the Legislature to provide a comprehensive, constitutional Workers' Compensation scheme, rather than rely on the courts to rewrite existing law or revive prior law. I believe that the remedy provided today fails to fully address the problems with the Workers' Compensation scheme because it will still leave some injured Florida workers without access to benefits to which they are entitled. Thus, the majority decision leaves Florida workers in an only marginally better position than they were in prior to this matter

by failing to address and remove the inadequate alternative remedy, thereby leaving the Workers' Compensation scheme unconstitutional and in need of major reform. As I see it, such a system is fundamentally unconstitutional and in need of legislative—not judicial—reform.

Over time, the Florida judiciary has repeatedly rewritten provisions of the Workers' Compensation law to avoid a declaration of unconstitutionality. No fair-minded individual who reads these decisions can reasonably conclude that they involve simple statutory interpretation. See, e.g., Newton v. McCotter Motors, Inc., 475 So. 2d 230, 231-32 (Fla. 1985) (Ehrlich, J., dissenting) (disagreeing with the holding that section 440.16(1), which provides that for a death to be compensable under the Workers' Compensation law, it "must result within one year of the accident or must follow continuous disability and must result from the accident within five years of the accident," see id. at 230, and does not violate access to courts for deaths that occur more than five years after the accident; noting that "[b]enefits paid during the life of the worker . . . cannot, and never were intended by the legislature to, substitute as a reasonable alternative for a cause of action for wrongful death"); Rhaney v. Dobbs House, Inc., 415 So. 2d 1277, 1279 (Fla. 1st DCA 1982) (upholding statutory provision that the American Medical Association Guides to the Evaluation of Permanent Impairment shall be used to determine permanent impairment until a permanent schedule is adopted; noting

that "[a]lthough the provisions of § 440.15(3)(a)3. are not unconstitutional per se, they could be unconstitutional in their application if this section were interpreted to mean that there could be no permanent impairment unless a medical doctor testified from the AMA Guides as to a certain percentage of permanent impairment set forth therein. However, the section should not be interpreted in that fashion.").[6] I have a full appreciation for the judicial attempts to save the Workers' Compensation statute from total disaster. Florida needs a valid Workers' Compensation program, but the charade is over. Enough is enough, and Florida workers deserve better.

The judicial rewriting of a problematic statute is no more evident than in the present case where section 440.15 has been rewritten not once, but twice. See Westphal, 122 So. 3d at 444 (avoiding a constitutional challenge by holding that under section 440.15(2)(a), "an injured worker who is still totally disabled at the end of his or her eligibility for temporary disability benefits is deemed to be at maximum medical improvement as a matter of law, even if the worker may get

---

6. This Court has also held that the invalidation of a comprehensive revision to the Workers' Compensation law for a single-subject violation should operate prospectively to avoid "the substantial impact on the entire workers' compensation system if we were to hold [the chapter law] void ab initio." Martinez v. Scanlan, 582 So. 2d 1167, 1176 (Fla. 1991). But see id. at 1177 (Barkett, J., concurring in part and dissenting in part) ("I do not believe it is the function of the judiciary to suspend constitutional principles to accommodate administrative convenience.").

well enough someday to return to work"); City of Pensacola Firefighters v. Oswald, 710 So. 2d 95, 98 (Fla. 1st DCA 1998) (bridging the unconstitutional gap by holding that to be eligible for permanent total disability benefits, "an employee whose temporary benefits have run out—or are expected to do so imminently— must be able to show not only total disability upon the cessation of temporary benefits but also that total disability will be 'existing after the date of maximum medical improvement' "); see also Matrix Emp. Leasing, Inc. v. Hadley, 78 So. 3d 621, 632 (Fla. 1st DCA 2011) (Van Nortwick, J., dissenting) ("[B]oth the approach adopted in Oswald (and reaffirmed by the majority opinion) and the approach expressed in the dissent are judicial 'patches' crafted to attempt to avoid a material 'gap' in disability benefits for injured workers who remain totally disabled on the expiration of temporary disability benefits. In my view, our concern with this potential 'gap' is not simply a humanitarian concern for particular claimants, but is based on our interest in avoiding a potential constitutional issue."). Although both rewrites of section 440.15 may have been good faith attempts to protect injured workers, neither cures the underlying invalidity of the statute.[7] One need only consider the multiple opinions in this case to understand the essential problem.

---

7. Further, it is not the role of the judiciary to rewrite a problematic statute. See Brown v. State, 358 So. 2d 16, 20 (Fla. 1978) ("When the subject statute in no way suggests a saving construction, we will not abandon judicial restraint and effectively rewrite the enactment.").

The truth of the matter is that section 440.15 is hopelessly broken and cannot be constitutionally salvaged. The judicial branch must terminate the practice of rewriting the statute. Under the plain language of the statute, many hardworking Floridians who become injured in the course of employment are denied the benefits necessary to pay their bills and survive on a day-to-day basis.[8] The inequitable impact of this statute is patent because it provides permanent total disability benefits to the disabled worker who reaches maximum medical improvement quickly, but arbitrarily and indefinitely terminates benefits to other disabled workers—i.e., until the employee proves that he or she is permanently and totally disabled once maximum medical improvement is attained, <u>even where there is no dispute that the employee is totally disabled at the time the temporary benefits expire, and even if maximum medical improvement will occur in the future</u>. Where totally disabled workers can be routinely denied benefits for an indefinite period of time, and have no alternative remedy to seek compensation for their injuries, something is drastically, fundamentally, and constitutionally wrong with the statutory scheme. See <u>Kluger v. White</u>, 281 So. 2d 1, 4 (Fla. 1973)

---

8. Moreover, there is no way to determine how many of these injured and disabled workers actually exist. Many may choose to suffer in silence rather than fight a system that is so obviously and drastically skewed against them. Thus, the number of disabled workers who are entitled to permanent total disability benefits—but cannot receive them because they have not yet reached maximum medical improvement—may be larger than anyone knows.

("[W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries.").

The reality is that Workers' Compensation benefits have been steadily chipped away and reduced by the Legislature to such an extent that intelligent, able jurists have now concluded enough is enough and declared the entire statutory scheme unconstitutional. See Cortes v. Velda Farms, No. 11-13661-CA-25, 2014 WL 6685226 at *10 (11th Cir. Ct. Aug. 13, 2014) ("As a matter of law, Chapter 440, effective October 1, 2003[,] is facially unconstitutional as long as it contains § 440.11 as an exclusive replacement remedy."), overruled for mootness and lack of standing by State v. Fla. Workers' Advocates, 167 So. 3d 500 (Fla. 3d DCA 2015). Although the majority opinion does not take this step, it too has recognized that Workers' Compensation benefits have been steadily eroded. Majority op. at 29. I submit that the time has come for this Court to uphold its sacred and constitutional duty and simply apply the words of the Legislature. In lieu of continuing to uphold the Workers' Compensation law with rewrites, judicial patches, and flawed

- 40 -

analyses, Chapter 440 should be invalidated where defective and the Legislature required to provide a valid, comprehensive program.

Florida families presume that when they report to work every day and perform their duties with dedication and diligence, a valid Workers' Compensation program will be in place should they ever become injured on the job and be precluded from seeking access to our courts. Indeed, the Workers' Compensation law was, at least initially, created to deliver adequate, fair, and prompt disability benefits to injured workers and balance workers' rights with business interests. However, section 440.15—both under its plain meaning, and as interpreted by the majority today—denies that critical safety net to the most seriously injured by hinging the award of permanent total disability benefits upon the attainment of maximum medical improvement, which cannot occur until a future date, but eliminates benefits until that future date arrives. I cannot vote to uphold this statute, or the interpretation of this statute, that denies such fundamental rights to the hardworking citizens of this State. It is time that both business interests and workers receive a valid, balanced program that can operate as Florida moves into its economic future.

Accordingly, I concur in result.

CANADY, J., dissenting.

I agree with the majority that Westphal should prevail on his argument—with which the City and the State agree—that the District Court erred in concluding that he should be "deemed to be at maximum medical improvement, regardless of any potential for improvement[,]" Westphal v. City of St. Petersburg/City of St. Petersburg Risk Management, 122 So. 3d 440, 446 (Fla. 1st DCA 2013), upon the expiration of his eligibility for temporary total disability benefits. Majority op. at 3-4. As the majority explains, the District Court's interpretation effectively rewrites the statute. I therefore would answer the certified question in the negative. But I would reject Westphal's argument that the statutory limitation on the period of eligibility for temporary total disability benefits violates the right of access to courts provided for in article I, section 21 of the Florida Constitution.

In the foundational case of Kluger v. White, 281 So. 2d 1, 4 (Fla. 1973) (emphasis added), we set forth the test for determining whether an access-to-courts violation has occurred:

> [W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the [1968] Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to [section 2.01, Florida Statutes], the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.

- 42 -

The threshold question in evaluating an access-to-courts claim therefore is whether the Legislature has abolished a right of redress that was in existence when the access to courts provision was incorporated into the 1968 Constitution.

Here, the challenged statutory provision restructures an existing right of redress. It does not abolish that right. The State argues persuasively that "today's workers' compensation system allowed Westphal substantially greater temporary total disability benefits than any 1968 statutory right provided" and that "[t]he amendment limiting temporary total disability benefits to 104 weeks, therefore, did not 'abolish' any pre-existing right." State's Answer Brief at 14. Westphal does not dispute the State's assertion that the aggregate compensation paid to him for temporary total disability benefits substantially exceeded the aggregate compensation for such benefits that would have been available under the pre-1968 law, even when the pre-1968 benefits are adjusted for inflation. Instead, he contends that "[t]his case is about weeks, not about dollars." Petitioner's Reply Brief at 9. But the decision to substantially increase weekly compensation for temporary total disability and to reduce the number of weeks that such benefits are paid is a trade-off that is a matter of policy within the province of the Legislature. The Legislature—rather than this Court—has the institutional competence and authority to make such policy judgments.

We have long recognized that the Legislature should be afforded latitude in the structuring of remedies both outside the worker's compensation context, see, e.g., White v. Clayton, 323 So. 2d 573 (Fla. 1975), and within the workers compensation context, see, e.g., Acton v. Fort Lauderdale Hosp., 440 So. 2d 1282 (Fla. 1983). We should do likewise here and reject Westphal's access-to-courts challenge.[9]

POLSTON, J., concurs.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

First District - Case No. 1D12-3563

Richard Anthony Sicking of Touby, Chait & Sicking, P.L., Coral Gables, Florida; and Jason Lawrence Fox of Bichler, Kelley, Oliver, Longo & Fox, PLLC, Tampa, Florida,

for Petitioner/Respondent

John C. Wolfe, City Attorney, Jeannine Smith Williams, Chief Assistant City Attorney, and Kimberly D. Proano, Assistant City Attorney, Saint Petersburg, Florida,

for Respondent/Petitioner City of Saint Petersburg

---

9. I am inclined to agree with Judges Benton and Thomas that competent substantial evidence does not support the determination by the Judge of Compensation Claims that Westphal did not establish that he would meet the requirements for permanent total disability when he reached maximum medical improvement. See Westphal v. City of St. Petersburg/City of St. Petersburg Risk Management, 122 So. 3d 440, 450 (Fla. 1st DCA 2013) (Benton, J., concurring in result); id. at 459-64 (Thomas, J., concurring in result only, and dissenting in part). But Westfall has not presented any argument to us on this point.

Pamela Jo Bondi, Attorney General, and Rachel Erin Nordby, Deputy Solicitor General, Tallahassee, Florida,

for Respondent/Petitioner State of Florida

Mark Lawrence Zientz of the Law Offices of Mark L. Zientz, P.A., Miami, Florida,

for Amicus Curiae Workers' Injury Law and Advocacy Group

Richard W. Ervin, III of Fox & Loquasto, P.A., Tallahassee, Florida,

for Amicus Curiae Florida Workers Advocates

Noah Scott Warman of Sugarman & Susskind, P.A., Coral Gables, Florida,

for Amicus Curiae Florida Professional Firefighters, Inc.

William J. McCabe, Longwood, Florida,

for Amicus Curiae Florida Justice Association

Geoffrey Bichler of Bichler, Kelley, Oliver & Longo, PLLC, Maitland, Florida,

for Amici Curiae Police Benevolent Association, The Florida Fraternal Order of Police, and International Union of Police Associations, AFL-CIO

Matthew J. Mierzwa, Jr. of Mierzwa & Associates, P.A., Lake Worth, Florida,

for Amicus Curiae The International Association of Fire Fighters

Andre M. Mura of the Center for Constitutional Litigation, P.C., Washington, District of Columbia,

for Amicus Curiae American Association for Justice

Jeffrey Edward Appel of Appel Harden Law Group, Lakeland, Florida; and Barbara Ballow Wagner of Wagenheim & Wagner, P.A., Fort Lauderdale, Florida,

for Amicus Curiae Voices, Inc.

William Harris Rogner, Winter Park, Florida,

for Amici Curiae Associated Industries of Florida, Associated Builders and Contractors of Florida, The Florida Chamber of Commerce, The Florida Insurance Council, The Property Casualty Insurers Association of America, The Florida Justice Reform Institute, Publix Super Markets, United Parcel Service, The Florida Roofing, Sheet Metal and Air Conditioning Contractors Association, The Florida Retail Federation, The American Insurance Association, The National Federation of Independent Business, The Florida United Businesses Association, Inc., and The Florida Association of Self Insureds